David TRAUDT, Appellant,

v.

POTOMAC ELECTRIC POWER
COMPANY, Appellee.

No. 94–CV–781.

District of Columbia Court of Appeals.

Argued Oct. 23, 1996.

Decided Jan. 16, 1997.

Marc Fiedler, Washington, DC, with whom Roger C. Johnson and Lisa R. Riggs were on the brief, for appellant.

Charles D. Tetrault, Washington, DC, with whom Mary H. Hirth was on the brief, for appellee.

Before FERREN, STEADMAN, and FARRELL, Associate Judges.

Opinion for the court by Associate Judge FARRELL.

Opinion by Associate Judge FERREN concurring in part and dissenting in part at 1339.

FARRELL, Associate Judge:

This appeal from summary judgment granted to defendant Potomac Electric Power Company (PEPCO) requires us to decide what duties, if any, PEPCO owed to plaintiff Traudt, an employee of an independent contractor, Waco, which PEPCO retained to remove asbestos from energized electrical cables in PEPCO's underground manhole system. Traudt suffered severe burns when a screwdriver he was using pierced the lead insulation covering a live wire and ignited an explosion. After receiving workers' compensation from Waco, Traudt sued PEPCO in Superior Court, alleging primarily that PEPCO breached three duties it owed him despite the intermediation of Waco: first, its statutory duty, under federal and local worksite safety laws, to provide Traudt with a safe place of employment; second, its duty to take special precautions, or to provide in the contract with Waco for the taking of such precautions, against the peculiar risk of harm that removal of a covering from energized, high voltage power lines was likely to create; and third, the duty arising from its (non-negligent) employment of Waco, which itself had been negligent in performing work PEPCO knew or had reason to know was inherently dangerous—this being a form of vicarious liability. The trial court rejected each theory of liability proffered, concluding that PEPCO had absolved itself of any duty it owed the employee of its independent contractor by informing Waco beforehand—a fact not in dispute—that the electric lines would remain energized during the asbestos removal.

We reverse and hold as a matter of law [1] that PEPCO owed Traudt duties under the common law "peculiar risk" doctrine and under its local statutory duty to provide employees—whether its own or those of an independent contractor—with a safe place of employment. As to each of these theories, PEPCO does not dispute that if it owed a duty, there are genuine issues of material fact as to whether it breached the duty so as to cause Traudt's injuries. (We reject PEPCO's argument as to the common law duty that Traudt was contributorily negligent as a matter of law.) We reject Traudt's remain-

---

1. *See Croce v. Hall,* 657 A.2d 307, 310 (D.C.1995) (citation omitted) ("[T]he question of whether a defendant owes a duty to a plaintiff under a particular set of circumstances is 'entirely a question of law ... [that] must be determined only by the court' ").

ing theories of liability, and, in particular, join the vast majority of state courts which have held that an employer such as PEPCO is not vicariously liable to the employee of an independent contractor for the latter's negligence.

## I. The Facts

### A. The Contract

PEPCO contracted with Waco, an asbestos abatement company, for the removal of asbestos from PEPCO's electrical cables throughout its manhole system. The contract stated that Waco was an independent contractor "and not an agent of PEPCO." It made Waco "solely responsible for the means, methods, techniques, sequences, and procedures of construction," upon the contractor's "represent[ation] prior to submitting his proposal [that] he [had] familiarized himself with ... the nature and extent" of the project, the job sites, and electric power. Waco was responsible for "initiating, maintaining and supervising all safety precautions and programs in connection with the Work," and was obligated to "comply with all applicable laws, ordinances, rules, regulations, and orders of any public body" concerning jobsite safety. PEPCO was under "[n]o obligation ... to review [Waco's] compliance with safety requirements or measures."

On the other hand, PEPCO reserved "the right at all reasonable times to inspect and test the Work," and the right "to perform itself, or contract for and perform other or additional work on or near the Work covered by this Contract." Waco was enjoined against doing its work in a way that "hinder[ed] the progress or completion" of such other work "being performed by PEPCO ... whether on the Project or not." And PEPCO could direct Waco to "cease work at any point" temporarily to "facilitate the erection of any other work" by PEPCO. Regarding safety, PEPCO required Waco to comply as well with PEPCO's own rules concerning safety and security, and reserved the right to direct removal of any Waco employee from

the work. PEPCO could provide additional workers or equipment any time Waco "refuse[d] to or neglect[ed] to supply a sufficient number of properly skilled workmen [or] sufficient equipment and/or materials," and PEPCO could stop the work if it was defective or otherwise "fail[ed] to satisfy the requirements of the Contract."

### B. The Accident

Traudt was hired by Waco in 1989. He had not completed high school and had not taken any course dealing with electricity. Before Waco's bid was submitted, PEPCO explained to Waco officials that the work would be performed on insulated cables that would remain "hot" or energized.[2] On the other hand, Traudt alleged, PEPCO did not furnish Waco with any written information, rules, or guidelines concerning the handling of PEPCO's power lines. Waco held a four-day asbestos removal training program for its employees which Traudt attended; the employees were to receive additional training on the job. In keeping with the contract ("The contractor shall keep a competent resident Superintendent on the Work at all times"), a Waco employee supervised the work, and PEPCO employees maintained no safety-related presence at the site except to conduct an atmospheric test for gases and visual inspection of the manhole each morning before work began.

Waco gave Traudt a hammer and metal screwdriver as tools and assigned him to work with foreman Ray Fenwick. According to Traudt, Fenwick told him to "take the tip of the screwdriver, stick it underneath one part of the [asbestos] wrap and pry it up." After the PEPCO inspector had tested the worksite for gases and pointed out which cables were to be cleaned, he left the site and Traudt entered the manhole. He removed the asbestos from one cable and began work on a second. When he used the screwdriver to pry up the wrapping, the tip of the screwdriver pierced the lead insulation of the wiring, causing contact with a live wire. An

---

**2.** PEPCO also asked Waco to show its employees "the types of cables that would be located in the manholes and how they had the asbestos wrapping and the conditions of the manholes that

[they] would be working in and the understanding of the voltage that would be running through some of the lines."

explosion ensued, the precise cause of which is disputed, but which resulted in burns to Traudt over most of his body.

In suing PEPCO, Traudt alleged *inter alia* that PEPCO provided him with an intrinsically unsafe place of work by leaving the power lines energized, failed to warn Waco's workers of the dangers associated with electricity or to train them in how to remove materials from live power lines, and failed to provide him or insure that he was provided with safe tools and equipment for working around high voltage electricity.

## II. Discussion

### A. The Industrial Safety Act

Traudt contends that PEPCO was obligated to provide him with a safe place of employment and insure the use of safe work practices and procedures under the D.C. Industrial Safety Act, D.C.Code § 36–228(a) (1993).[3] That section provides:

(a) Every employer shall furnish a place of employment which shall be reasonably safe for employees, shall furnish and use safety devices and safeguards, and shall adopt and use practices, means, methods, operations, and processes which are reasonably safe and adequate to render such employment and place of employment reasonably safe.

An "employer" includes "every person" or other entity "having control or custody of any place of employment or of any employee." *Id.*, § 36–222(1). PEPCO contends that it owed Traudt no duty under the statute because it had no "control or custody" of Traudt as an employee or over the place of employment. As PEPCO concedes, however, control in either aspect—of any employee *or* of the place of employment—is enough to impose the statutory duty. We hold that PEPCO's ownership of the manhole system and the electric cables, together with the authority it reserved in the contract to monitor Waco's work and perform other work simultaneously at the job site, established its control of the "place of employment" sufficient to make it Traudt's employer for purposes of the statute.

In *Martin v. George Hyman Constr. Co.*, 395 A.2d 63 (D.C.1978), we pointed out that the statutory duty of due care imposed by this statute "is broader than its common law counterpart because it is incumbent not only upon employers as defined at common law but also upon 'every person ... having control or custody of any industrial employment, place of employment, or of any employee.'" *Id.* at 70. Coverage, in other words, does not depend upon a particular degree of control or supervision exercised by the employer over the wage earner or work performed, if alternatively the employer has control of the worksite. Here, PEPCO concededly retained ownership of the workplace and the electric cables, asserting this form of control concretely by dictating that work on the cables was to be done while they were energized. The contract also made clear PEPCO's right to perform other work itself or through others on the job site, and to adjust Waco's scheduling to PEPCO's own need to do unrelated work. With respect to the work Waco would perform, PEPCO insisted on compliance with its own as well as public safety rules and reserved the right to inspect that work, direct stoppage, and require replacement or supplementation of personnel and equipment in case of noncompliance with the contract. This combination of circumstances establishes the requisite employer-employee relationship even though (as PEPCO argues) PEPCO did not hire or pay Traudt or otherwise control the terms of his employment, *see, e.g., Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323–24, 112 S.Ct. 1344, 1348–49, 117 L.Ed.2d 581 (1992) (discussing "whether a hired party is an employee under the general common law of agency"), and did not under the contract

---

**3.** Traudt also argued in the trial court that PEPCO had breached duties owed to him under the Occupational Safety and Health Act of 1970 (OSHA), but has abandoned that argument on appeal.

As the parties concede, the Industrial Safety Act will stand repealed two years after approval by the Secretary of Labor of a "plan" submitted pursuant to D.C.Code § 36–1204 (1993), part of the District of Columbia Occupational Safety and Health Act of 1988. The parties also agree, however, that at the time of Traudt's accident that approval had not taken place.

direct the operative detail of Traudt's work. At the same time, PEPCO's duty under the statute is limited to those elements of the workplace over which it has "control or custody," and the jury should be so instructed.[4]

██ PEPCO's remaining argument against application of the statute, made in a footnote in its brief, is that the duty which it imposed has been preempted by OSHA, see note 3, *supra.* We disagree. Courts must apply preemption analysis "narrow[ly]" with regard both to "whether Congress intended any pre-emption at all, ... [and] to questions concerning the *scope* of its intended invalidation of state law." *Medtronic, Inc. v. Lohr,* —— U.S. ——, ——, 116 S.Ct. 2240, 2250, 135 L.Ed.2d 700 (1996). We explained in *P & Z Co. v. District of Columbia,* 408 A.2d 1249, 1250 (D.C.1979), that "[t]he OSHA preemption subsections specifically apply only to [federal] standards promulgated by rule under § 655" of OSHA. Such a "standard" is a "requirement that directly, substantially, and specifically regulates occupational safety and health." *Gade v. National Solid Wastes Management Ass'n,* 505 U.S. 88, 107, 112 S.Ct. 2374, 2388, 120 L.Ed.2d 73 (1992). While OSHA standards specifically addressing employee safety in regard to work with and around electrical circuits, as well as in manholes, were in effect at the time of Traudt's accident,[5] no regulation adopted at the time or since then suggests Congressional intent to preempt the general duty of care imposed by D.C.Code § 36–228(a). Indeed, OSHA itself contains a "general duty" section comparable to § 36–228(a), see 29 U.S.C. § 654(a)(1)-(2), which plainly is not a "standard" promulgated under § 655. Moreover, OSHA explicitly states that it is not intended to enlarge or diminish the common law or statutory rights or duties of employers and employees in respect to work-related injuries. 29 U.S.C. § 653(b)(4); *see Jones v. Cincinnati, Inc.,* 32 Mass.App.Ct. 365, 589 N.E.2d 335, 339–40 (1992). Recognizing

PEPCO's duty under § 36–228(a) does not subject it to "duplicative regulation" of the sort Congress meant to preclude. *Gade,* 505 U.S. at 100, 112 S.Ct. at 2384 (plurality opinion).

Traudt may properly proceed to trial on any duty owed him under D.C.Code § 36–228(a).

### B. "Peculiar Risk"

Traudt contends that PEPCO owed him a duty under the "peculiar risk" doctrine set forth in RESTATEMENT (SECOND) OF TORTS § 413 (1965), which states:

> One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer
>
> (a) fails to provide in the contract that the contractor shall take such precautions, or
>
> (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.

Although PEPCO appears to think otherwise in its brief, this theory is one of direct liability predicated upon the employer's own negligence in "fail[ing] to provide in the contract, or in some other manner, that the contractor shall take the required precautions." *Id.,* Comment a.

██ PEPCO first argues that Traudt, as an employee of an independent contractor, is not one (an "other[ ]") to whom a duty is owed under this section. That argument is untenable in light of our decision in *Fry v. Diamond Const., Inc.,* 659 A.2d 241 (D.C. 1995). There we rejected the identical argument made with respect to the separate but related theory of employer liability for acts of

---

4. Since Traudt was an "employee," albeit of Waco, PEPCO's reliance on *Kurtz v. Capital Wall Paper Co.,* 61 A.2d 470 (D.C.Mun.App.1948), for excluding him from the reach of the statute is misplaced. *See id.* at 471 (analogous workplace safety regulation not "intended to protect any one other than employees or wage earners," hence did not extend to customer injured on

company premises); *see also Thoma v. Kettler Bros.,* 632 A.2d 725 (D.C.App.1993) (same as to prospective purchaser of house).

5. *See, e.g.,* 29 C.F.R. § 1926.416(a)(1) & (3); § 1926.950(c)(1); § 1926.956(b)(1).

an independent contractor pursuant to orders negligently given by the employer. RESTATEMENT, *supra*, § 410. Pointing out that "the authorities [were] uniformly ... contrary" to the employer's position, we quoted as an example the holding of the Supreme Court of Alaska that "'[t]he theory of liability of § 410 ... is that of personal fault on the employer's part.... The engineer or architect owes a duty to the employees of an independent contractor to avoid endangering them by its own negligence.'" *Fry*, 659 A.2d at 247 (emphasis deleted) (quoting *Moloso v. State*, 644 P.2d 205, 216 (Alaska 1982)). There is no basis for distinguishing the class of "others" to whom a duty is owed under § 410 from the identical class reached by § 413. Indeed, in *Fry, supra*, we took for granted the application of § 413 to employees of an independent contractor in separately holding that a trial was necessary on whether the employer's directions to the contractor created a "peculiar risk" of harm to the latter's employee under § 413. *See* 659 A.2d at 249.

■ PEPCO further urges us to limit the scope of the duty owed under § 413 to a duty to warn the independent contractor of the peculiar risk entailed by the job—a duty it says it fulfilled by obtaining Waco's assurance of familiarity with electricity during the bid process and specifically informing Waco that the power lines would be energized during the work. *See, e.g., Snodgrass v. Cohen*, 96 F.Supp. 292, 294 (D.D.C.1951) ("very narrow scope" of duty of "proprietor of real property, who procures work to be done thereon by an independent contractor, is ... to warn the contractor ... of the existence of any [latent] dangerous condition on the premises ... if the owner is himself aware of the hazard"). This court has not had occasion to adopt or reject as a basis for liability the particular duties stated in § 413 rather than a more limited duty to warn.[6] *Compare*

*Wilson v. Good Humor Corp.*, 244 U.S.App. D.C. 298, 310, 757 F.2d 1293, 1305 (1985) ("there are sufficient indications in local law to suggest that [the court] would apply some version of the peculiar risk doctrine to the circumstances of this case") *with id.* at 316, 757 F.2d at 1311 (Bork, J., concurring) (not "clear" that "the Court of Appeals will adopt the Restatement's expansive version of the peculiar risk doctrine" rather than a narrower duty to warn contractor of risks involved).

■ Traudt responds that to limit PEPCO's duty to that of warning of a known hazard would fly in the face of our consistent holding that a landowner's duty to all but trespassers is the broader one of exercising "reasonable care under all of the circumstances," *Sandoe v. Lefta Assocs.*, 559 A.2d 732, 738 (D.C.1988) (citing cases), which may include considerably more than the need to give warning. That point is persuasive, but we need only decide on the undisputed facts of this case that PEPCO's duty was commensurate with that stated in § 413. PEPCO does not dispute that the work Waco performed on cables carrying 2,400 volts of electricity entailed a peculiar risk in the sense of "a special, recognizable danger" that was unreasonable unless special precautions were taken. RESTATEMENT, § 413, Comment b. And while Waco warranted in the contract that it had "familiarized" itself with electric power, PEPCO retained Waco because of its expertise in asbestos removal, not electricity, and PEPCO cannot dispute that its knowledge of the peculiar hazards of work on highly-charged power lines and the special precautions needed against those risks dwarfed Waco's. It is entirely reasonable in these circumstances to expect that PEPCO would either require Waco by contract to take special precautions or would take those precautions itself. We hold that PEPCO owed Traudt the duty set forth in § 413 of the Restatement.[7]

---

6. *Fry* presented no occasion to decide that issue because the employer's negligence there, shown sufficiently to require a trial, was in *creating* the "peculiar risk" by directing the contractor to do the work in a certain way; even to speak of a duty to warn against the existence of that risk would, accordingly, have made no sense in *Fry*.

7. In a footnote, PEPCO asserts that, even as to the Industrial Safety Act and peculiar risk bases of direct liability, "Traudt's action should be barred as a matter of law by the workers' compensation laws." That argument is foreclosed by *Meiggs v. Associated Builders, Inc.*, 545 A.2d 631, 638 (D.C.1988) (employee receiving workers' compensation may still "pursue his full common

■ We further reject, in this connection, PEPCO's assertion that undisputed facts demonstrate contributory negligence on Traudt's part.[8] There are disputed issues of material fact as to Traudt's training and knowledge with respect to the handling of energized, high voltage power lines and whether he was even informed that the lines would remain energized during the work. *See, e.g., Bell v. Jones,* 523 A.2d 982 (D.C. 1986); *Stager v. Schneider,* 494 A.2d 1307 (D.C.1985).

### C. "Negligent Direction" and "Retained Control"

Traudt asserts two additional theories of PEPCO's direct liability on which he contends he should be allowed to proceed to trial. As to each of these theories, we hold that summary judgment was properly granted.

■ Traudt first contends that PEPCO owed him the duty set forth in § 410 of the Restatement:

> The employer of an independent contractor is subject to the same liability for physical harm caused by an act or omission committed by the contractor pursuant to orders or directions negligently given by the employer, as though the act or omission were that of the employer himself.

As explained earlier, this was the primary theory of liability alleged in *Fry, supra.* We held there that triable issues of fact existed as to whether an employer breached this duty by expressly directing an independent contractor to use an unsafe practice, *i.e.* erect a ladder on top of scaffolding to paint upper windows. 659 A.2d at 246–47.

■ Traudt, however, cannot rely on the duty imposed by § 410. It pertains to an employer "who either employs a contractor to do work which, no matter how carefully done, involves an unreasonable risk of physical harm to others ... or who employs a contractor to do work which could be safely done but for the fact that he directs the

contractor to do it in a manner involving such a risk." RESTATEMENT, *supra,* § 410, Comment b. Unlike liability under § 413, the availability or not of precautions to make the work safe is immaterial to this theory. The work Waco contracted to perform was not work that, "no matter how carefully done," posed an unreasonable risk of harm. If that were the case, PEPCO could scarcely ever avoid liability for allowing work to be done on energized but insulted high-voltage wires. Nor did PEPCO direct either Traudt or his employer to perform the work in an unsafe manner. It did not direct him to use a hammer and screwdriver to unwrap the asbestos; indeed, it did not specify at all the means and methods Waco was to use other than to require compliance with public safety codes and PEPCO's own safety rules. PEPCO's alleged failure to take precautions— such as turning off the electric power[9] or providing or requiring special training or equipment—is the basis for its potential liability under § 413, but we cannot equate that failure with the affirmative "orders and directions" contemplated by § 410 without erasing the distinction between that section and § 413.

■ Traudt's reliance on § 414 of the Restatement fails for similar reasons. It provides that

> [o]ne who entrusts work to an independent contractor, *but who retains the control of any part of the work,* is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care. [Emphasis added.]

Unlike the test under D.C.Code § 36–228(a), *supra,* the operative words here are "control of any part of the *work*" (emphasis added), not the employee or place of employment. The control retained must be "supervisory control," Comment a, which is not present unless, through the contractual provisions or

---

8. *Martin v. George Hyman Constr. Co., supra,* of course, precludes assertion of this defense as to

law remedy when the employee believes that the negligence of a third person caused his injury").

9. There is a dispute in the evidence as to whether this would have been feasible.

the alleged breach of PEPCO's duty under the Industrial Safety Act.

actual conduct at the worksite, the employer has retained

> at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail.

Comment c. Accordingly, retained control under § 414 must be control of the "operative detail" or the "methods" of the work performed. *See, e.g., Grammer v. Patterson,* 860 F.2d 639, 644 (5th Cir.1988); *Fleck v. ANG Coal Gasification Co.,* 522 N.W.2d 445, 447 (N.D.1994); *Parker v. Neighborhood Theatres, Inc.,* 76 Md.App. 590, 547 A.2d 1080, 1085 (1988).

Here, as pointed out, PEPCO's contract with Waco made the contractor "solely responsible for the means, methods, techniques, sequences, and procedures" of the asbestos removal. Responding to the question in deposition whether PEPCO gave Waco "any directions or instructions or guidelines with regard to how the asbestos was to be removed," Waco's Vice–President answered "No. They were looking at us as the professionals to tell them how to remove it and how to do it." While PEPCO retained the right to inspect the work, direct changes, and order replacement of employees or equipment, these fall squarely within the "general right[s] ... usually reserved to employers" that do not create § 414 liability. PEPCO officials' role at the worksite consisted only of testing the manhole for explosive gases each morning before letting the work begin.

■ Traudt argues, however, that PEPCO retained control—indeed, exclusive control—of a critical feature of the job: the decision whether to de-energize the wires during the work. There is some support for this argument. *See, e.g., Stephenson v. Pacific Power & Light Co.,* 779 P.2d 1169, 1177

(Wyo.1989) ("[I]n situations where the owner maintains control over the hazard causing the harm, the owner should not be exempt from liability"). But we think this confuses the nature of the contract work with control over its methods and means. The fact that an owner in requesting bids specifies conditions under which the work is to be done does not equate with supervision and control of its operative details. For reasons sufficient to itself, PEPCO stipulated that the asbestos removal could not interfere with transmission of electricity through the circuits. That, as we have held, created a peculiar risk of harm constructively known to it and for which it was obliged to take special precautions or require Waco to take such precautions. RESTATEMENT, *supra,* § 413. But this knowledge and duty, without more, are not the supervisory control of the methods and manner of the work that § 414 contemplates. Otherwise there would be nothing separating the two theories whenever a potentially hazardous job could be designed more safely. Traudt has not shown that PEPCO retained the control of "operative detail" that § 414 requires.

### D. Vicarious Liability

Finally, Traudt asserts that PEPCO, regardless of its own fault, was vicariously liable for Waco's negligence. *See* RESTATEMENT, *supra,* §§ 416 and 427; *Lindler v. District of Columbia,* 164 U.S.App. D.C. 35, 502 F.2d 495 (1974). As Traudt points out, we have repeatedly held that

> [o]ne who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the *contractor's failure* to take reasonable precautions against such danger.

*Levy v. Currier,* 587 A.2d 205, 209 (D.C.1991) (emphasis added) (quoting RESTATEMENT, *supra,* § 427). *See also District of Columbia v. Howell,* 607 A.2d 501, 505 (D.C.1992); *Washington Metro. Area Transit Auth. v. L'Enfant Plaza Properties, Inc.,* 448 A.2d 864, 868

(D.C.1982). PEPCO responds that in none of these cases (except the non-binding case of *Lindler* ) was the person to whom we held the duty was owed an employee of an independent contractor; that we have not considered whether to extend that class to include employees; and that we should join the great majority of courts in rejecting vicarious liability in the workplace setting where the injured employee has the remedies of both workers' compensation from his employer and fault-based suit against the contractee/employer. To Traudt's response that in fact we resolved this issue in favor of vicarious liability in *Fry, supra,* PEPCO rejoins that the issue was not "passed upon" and so was not decided in *Fry.*

### 1.

■■■■ We consider first, therefore, the precedential significance of *Fry,* mindful that "[t]he rule of stare decisis is never properly invoked unless in the decision put forward as precedent the judicial mind has been applied to and passed upon the precise question," and that "[a] point of law merely assumed in an opinion, not discussed, is not authoritative." *District of Columbia v. Sierra Club,* 670 A.2d 354, 360 (D.C.1996) (citations and internal quotation marks omitted). We conclude that *Fry* does not resolve the issue at hand.

In *Fry,* as indicated previously, there was evidence which a jury could credit that the general contractor had directed the sub-contractor to place a ladder on top of scaffolding to reach and paint some upper windows instead of renting a "scissors lift." The resulting collapse of the ladder injured the contractor's employee, Fry, Jr., who later brought suit against the general contractor. We pointed out that "Fry, Jr.'s case depends largely, if not entirely, on [the] alleged instruction to Fry, Jr. to use the scaffolding and ladder"; indeed, we said that that evidence "so dominates the issues before us that the five counts [of the complaint] all but merge into a single claim." 659 A.2d at 247. As our discussion made clear, the instruction to Fry, Jr., if proven, was a classic example of direct liability of an employer who "orders or directs" the independent contractor to do work in an unsafe manner. *Id.* at 246–47.

In this context of " 'personal fault on the employer's part,' " *id.* at 247 (quoting *Moloso v. State, supra;* italics omitted), we considered and rejected the argument that § 410 "may not be invoked by employees of the independent contractor." *Id.* at 246. And in doing so we rejected the employer's reliance on a Wisconsin Supreme Court decision that, unlike the District of Columbia Circuit in *Lindler, supra,* had limited vicarious liability for inherently dangerous work to injured members of the general public. Although we commented that *Lindler* was a "well-reasoned opinion," we said that "even if we were disposed in an appropriate case to reject [it] in favor of" the Wisconsin court's analysis, that issue was moot in *Fry,* which involved "an employer's negligent directive"—an issue "not discussed or even mentioned" in the Wisconsin opinion dealing with vicarious liability. *Id.* at 247 n. 7.

Later in *Fry* we treated, without differentiating between direct and vicarious liability, Fry, Jr.'s two counts alleging liability for inherent danger (§§ 416 and 427) and peculiar risk (§ 413). The issue before us was whether the trial court, in granting summary judgment for the defendant, had properly concluded "that scaffolding and painting are not inherently dangerous activities." *Id.* at 249. We cited the settled proposition that work, though not intrinsically hazardous, can become so by the manner in which it is done, and we pointed again to the evidence of record that the employer "not only tolerated the perilous methodology but actually directed [the independent contractor] to follow it." *Id.* Nonetheless, our reversal of the trial court was premised on the rule that

> [a]n employer is liable for injuries caused by the negligence of an independent contractor where the work performed by the contractor is inherently dangerous. *Levy v. Currier,* 587 A.2d [at 209]; *Lindler, supra* . . ., 164 U.S.App. D.C. at 38, 502 F.2d at 495 (applying this rule in favor of independent contractor's employee).

*Id.* Traudt argues that this language, as part of the court's holding, binds us in this case.

As stated, however, nowhere in this part of the opinion did the court consider and pass

upon the distinction between direct and vicarious liability; we reversed as to "inherent danger" (vicarious) and "peculiar risk" (direct) for "similar reasons," *id.*, namely, the employer's knowledge and express directive which furnished the evidentiary basis for trial on either theory. Only in the earlier footnote 7 had we even adverted to vicarious liability separately (while never using that term) in distinguishing the Wisconsin court's treatment of inherently dangerous work liability from the direct negligence theory that "so dominate[d] the issues before us." *Id.* at 247. Although we cited *Lindler* approvingly but without discussion, we recognized that a "hypothesized readiness" to reject it in favor of the Wisconsin holding, or vice-versa, had no bearing on the negligent directive liability underlying all of the counts in *Fry. Id.* at 247 n. 7. At the very best, therefore, the employer's liability strictly for negligence of the independent contractor was a "point of law merely assumed in [*Fry* ]" and not passed upon or decided there. *Sierra Club,* 670 A.2d at 360. We accordingly turn to the merits of the issue.

### 2.

Traudt contends there is no sound reason for permitting a non-employee, say, a passer-by, to hold a contractee liable for the independent contractor's negligence in performing dangerous work but not an employee of the latter. Treating the two classes of victim equally—since both are identically "within the ambit of risk"—would in his view comport with "the trend in this jurisdiction to abolish artificial distinctions among tort victims based on their status." The first point to be borne in mind, however, is the limited nature of the distinction that prevails if Traudt's position is rejected. Traudt, like any injured member of the public, was free to sue PEPCO for the company's own negligence despite having recovered for his injuries under the workers' compensation statute. *See Meiggs v. Associated Builders, Inc., supra* note 7; *DiNicola v. George Hyman Constr. Co.,* 407 A.2d 670 (D.C.1979) (precedessor Longshoreman's Act). While relieved of the need to prove fault to recover through his employer's insurance, Traudt could simultaneously bring this suit against PEPCO for its independent failure to provide him with a safe workplace and take (or require) special precautions against the peculiar risks of the job. Viewing the matter in this light, the distinction Traudt criticizes seems much less "artificial" than the one necessitated by his position: between an ordinary employee and an employee of an independent contractor. While both are entitled to workers' compensation, relinquishing the right to sue their respective employers for negligence, *see* D.C.Code § 36–304(a) & (b) (1993), the latter but not the former under Traudt's view may still sue in tort for the employer's negligence by way of vicarious liability. Traudt offers no sound policy reason why the fact alone of an independent contractor relationship should yield that distinction.

For this and similar reasons, the vast majority of state courts considering the issue have held that employers of independent contractors are not vicariously liable to the employees of the independent contractor under sections 416 and 427 of the Restatement.[10] We ally ourselves with that majori-

---

10. *See, e.g., Morris v. City of Soldotna,* 553 P.2d 474 (Alaska 1976); *Jackson v. Petit Jean Electric Co-op.,* 270 Ark. 506, 606 S.W.2d 66 (1980); *Privette v. Superior Court,* 5 Cal.4th 689, 21 Cal. Rptr.2d 72, 854 P.2d 721 (1993); *Ray v. Schneider,* 16 Conn.App. 660, 548 A.2d 461 (1988); *Peone v. Regulus Stud Mills, Inc.,* 113 Idaho 374, 744 P.2d 102 (1987); *Johns v. New York Blower Co.,* 442 N.E.2d 382 (Ind.Ct.App.1982); *Dillard v. Strecker,* 255 Kan. 704, 877 P.2d 371 (1994); *King v. Shelby Rural Elec. Coop. Corp.,* 502 S.W.2d 659 (Ky.1973); *Rowley v. City Council of Baltimore,* 305 Md. 456, 505 A.2d 494 (1986); *Vertentes v. Barletta Co.,* 392 Mass. 165, 466 N.E.2d 500 (1984); *Conover v. Northern States Power Co.,* 313 N.W.2d 397 (Minn.1981); *Zueck v. Oppenheimer Gateway Properties, Inc.,* 809 S.W.2d 384 (Mo.1991); *Anderson v. Nashua Corp.,* 246 Neb. 420, 519 N.W.2d 275 (1994); *Sierra Pacific Power Co. v. Rinehart,* 99 Nev. 557, 665 P.2d 270 (1983); *Donch v. Delta Inspection Servs., Inc.,* 165 N.J.Super. 567, 398 A.2d 925 (Law Div.1979); *Whitaker v. Norman,* 75 N.Y.2d 779, 552 N.Y.S.2d 86, 551 N.E.2d 579 (1989); *Fleck v. ANG Coal Gasification Co., supra; Curless v. Lathrop Co.,* 65 Ohio App.3d 377, 583 N.E.2d 1367 (1989); *Tauscher v. Puget Sound Power and Light Co.,* 96 Wash.2d 274, 635 P.2d 426 (1981); *Wagner v. Continental Casualty Co.,* 143 Wis.2d 379, 421 N.W.2d 835 (1988); *Jones v. Chevron U.S.A., Inc.,* 718 P.2d 890 (Wyo.1986).

ty. Our decision to do so reflects a policy judgment, see *Williams v. Baker,* 572 A.2d 1062, 1064 (D.C.1990) ("[t]he existence of a duty [in tort law] . . . results ultimately from policy decisions made by the courts and the legislatures"), but not the court's alone. In the District of Columbia, the primary source of worker recovery for injuries arising from the employment is the Workers' Compensation Act. "This recovery may be had although the injury was brought about by the employee's carelessness and absent any negligence on the part of the employer." *Rowley v. City Council of Baltimore, supra* note 10, 505 A.2d at 500. The reason for this departure from basic tort principles is the *"quid pro quo"* philosophy underlying the statute: "in return for the purchase of insurance against job-related injuries, the employer receives tort immunity; in return for giving up the right to sue the employer, the employee receives swift and sure benefits." *Meiggs, supra* note 7, 545 A.2d at 637. In *Meiggs* we rejected the argument that the statute was intended to relieve any "negligent actors" from common law tort liability except the employer required to purchase insurance, *id.;* on the contrary, we discerned in it "a conscious legislative policy to permit an employee to pursue his full common law remedy when the employee believes that the negligence of a third person caused his injury." *Id.* at 638. But Traudt can point to nothing in the statute that bespeaks an intent to let the immunized employer's negligence furnish the basis for a non-negligent third party's liability. Just the opposite seems true, for it is hardly consistent with the statute that appellant, "simply because he was an employee of an independent contractor, should be placed in a better position than if he had been an employee of [the statutory employer], in which case his recovery would be limited without question to the benefits provided by the [Workers'] Compensation Act." *Rowley,* 505 A.2d at 500. *See also Vertentes v. Barletta Co., supra* note 10, 466 N.E.2d at 507 (Abrams, J., concurring) ("only fortuity

distinguishes employees of independent contractors from those working directly for the party for which inherently dangerous work is performed").

We need not rehearse all of the reasons set forth in the decisions rejecting vicarious liability in this context. They are convincingly stated in decisions such as *Privette* (California), *Vertentes* (Massachusetts), *Fleck* (North Dakota), and *Ray v. Schneider* (Connecticut), all *supra* note 10. On the one hand, these courts emphasize the "indefensible status distinction between employees of an independent contractor and employees working directly for the general contractor" that vicarious liability would create. *E.g., Vertentes,* 466 N.E.2d at 507 (Abrams, J., concurring); *Privette,* 21 Cal.Rptr.2d at 80, 854 P.2d at 729. That distinction, as the Supreme Court of California has said, would "produce[] the anomalous result that a non-negligent person's liability for an injury is greater than that of the person whose negligence actually caused the injury," shielded as the latter is by the exclusive remedy provision of the statute. *Id.* at 79, 854 P.2d at 728. And to avoid that result,

> employers of independent contractors who perform inherently dangerous work may demand indemnity from those contractors for any recovery obtained by the contractor's employees. This would expose independent contractors to potential liability far greater than that of other employers covered by workmen's compensation statutes.

*Vertentes,* 466 N.E.2d at 503. It is not an answer to say that the independent contractor's duty will stem from its "voluntary" contractual agreement to indemnify the employer. It is still vicarious liability that drives the bargain. The anomaly thus remains that an employer who meets its statutory duty to provide insurance is shielded from liability for its negligence, but an independent contractor who does the same is not.[11]

---

11. The District of Columbia Circuit in *Lindler, supra,* in adopting vicarious liability in the employment context, stated: "The *quid pro quo* of contribution to workmen's compensation, at least in the District of Columbia, is not a correct rationale for non-liability where that *quid pro*

*quo* is not required by law." 164 U.S.App. D.C. at 39, 502 F.2d at 499. This overlooks the fact that it is precisely the independent contractor "required by law" to purchase compensation insurance who may also be liable for negligence by operation of vicarious liability and indemnity.

At the same time, these courts point out that "denial of [vicarious liability] recovery for an employee of an independent contractor does not encourage an employer to evade liability through the device of a contract with an independent contractor." *Id.* First, since the contract price will take into account the independent contractor's potential workers' compensation liability, "[t]he employer of the independent contractor, in effect, pays the workmen's compensation premium through the contract price." *Id.; see Privette,* 21 Cal.Rptr.2d at 79, 854 P.2d at 728. Second, as we have stressed, the employer remains subject to liability for its own negligence in hiring or retaining an independent contractor, *Fry,* 659 A.2d at 248; RESTATEMENT, *supra,* § 411, as well as on the fault-based grounds treated in parts A, B, and C of this opinion; and it may be vicariously liable to members of the general public. *Levy v. Currier, supra.*

 "The principle of liability for individualized fault is the norm, whereas vicarious liability 'is regarded as an exceptional solution.'" *Ray v. Schneider, supra* note 10, 548 A.2d at 466 (citation omitted). The exception for inherently dangerous work comports with sound social policy insofar as it protects members of the general public "who have no direct involvement with the hazardous activity, are only incidentally exposed to its risks and have no direct means of insuring themselves against loss." *Jackson v. Petit Jean Electric Co-op., supra* note 10, 606 S.W.2d at 69. But no similar policy justifies its extension to employees of independent contractors, thereby "exempt[ing] a single class of employees ... from the statutorily mandated limits of workers' compensation." *Privette,* 21 Cal.Rptr.2d at 80, 854 P.2d at 729. This court has shown "readiness to eradicate illogical or inequitable status distinctions among tort plaintiffs," *Vertentes, supra* note 10, 466 N.E.2d at 505 (Abrams, J., concurring),[12] but it has done so to avoid

"sanctioning an incremental degree of carelessness by a defendant toward specified categories of victims." *Id.* Vicarious liability, by contrast, entails "a duty to pay unrelated to any breach of duty to the plaintiff by the liable party." *Id.* We are satisfied that the remedies available to employees in Traudt's position require no expansion of the class to whom duties are owed under §§ 416 and 427 to include employees of independent contractors.[13]

### III.

Traudt has demonstrated triable issues of fact on whether PEPCO breached a duty to him under the Industrial Safety Act and under § 413 of the Restatement. The judgment of the Superior Court is, accordingly,

*Reversed.*

FERREN, Associate Judge, concurring in part and dissenting in part:

I join in the opinion for the court except for Part II.D on vicarious liability, from which I respectfully dissent.

Contrary to the majority's analysis in Part II.D.1, I believe that in *Fry v. Diamond Construction, Inc.,* 659 A.2d 241 (D.C.1995), this court unequivocally adopted the rule announced in *Lindler v. District of Columbia,* 164 U.S.App. D.C. 35, 502 F.2d 495 (1974), authorizing an independent contractor's employee to sue the contractor's employer for negligence under RESTATEMENT (SECOND) OF TORTS § 427 (1965), based on vicarious liability attributable to inherently dangerous activity. On that issue we said in full:

> D. *Inherent Danger and Peculiar Risk of Harm.*
>
> In Counts IV and V of his complaint, Fry, Jr. alleged that the work to be done was inherently dangerous and exposed him to a peculiar risk of harm. An employer is liable for injuries caused by

**12.** *See, e.g., Sandoe, supra,* 559 A.2d at 738 (pointing out this court's previous elimination of the common law distinction between invitees and licenses and adopting a reasonable care standard as to persons lawfully upon the premises); *Williams v. Baker, supra,* 572 A.2d 1062 (rejecting "physical impact" rule in favor of broader

"zone of danger approach" as basis for tort of negligent infliction of emotional distress).

**13.** For the same reason, we reject Traudt's reliance on § 427A (abnormally dangerous activity), although he did not, in any event, assert that theory in the trial court.

the negligence of an independent contractor where the work performed by the contractor is inherently dangerous. *Levy v. Currier,* 587 A.2d 205, 209 (D.C. 1991); *Lindler, supra,* note 7, 164 U.S.App. D.C. at 38, 502 F.2d at 495 (applying this rule in favor of independent contractor's employee). The trial judge, as we have seen, held that scaffolding and painting are not inherently dangerous activities.

But the application of the "inherent danger" rule is not limited to intrinsically hazardous work. *District of Columbia v. Howell,* 607 A.2d 501, 505 (D.C. 1992). On the contrary, the rule applies, *inter alia,* where "the employer has special reason to contemplate such a risk [of harm] under the particular circumstances under which the work is to be done." *Levy, supra,* 587 A.2d at 209 (quoting RESTATEMENT (SECOND) OF TORTS § 427, cmt. b (1965)). In the present case, Barnas testified that he was well aware of the danger posed by the "scaffolding and ladder" procedure. According to Fry, Sr., Barnas not only tolerated the perilous methodology but actually directed Fry, Sr. to follow it.

"Whether a particular kind of work is inherently dangerous is essentially a relative determination based upon the facts of the particular case." *Taylor v. Tellez,* 610 A.2d 252, 255 (D.C.1992) (citations omitted). "The existence of [a] danger and knowledge of it by the employer are normally questions of fact for the jury." *Howell, supra,* 607 A.2d at 505. Given Fry, Sr.'s testimony, there were genuine issues of material fact precluding entry of summary judgment on Fry, Jr.'s claim of "inherently dangerous" activity. For similar reasons, we conclude that summary judgment was improperly entered on Fry, Jr.'s related claim under the "peculiar risk" doctrine. *See Wilson v. Good Humor Corp.,* 244 U.S.App. D.C. 298, 309, 757 F.2d 1293, 1304

(1985); RESTATEMENT (SECOND) OF TORTS, § 413 cmt. b. (1965).
*Fry,* 659 A.2d at 249 (footnote omitted).

From the discussion and citations, it is clear that we ruled in Counts IV and V, respectively, on vicarious liability for inherently dangerous activity under § 427 (citing *Levy, Lindler, Taylor,* and *Howell*) and on direct liability for "peculiar unreasonable risk of physical harm" under § 413 (citing *Wilson*).[1] Indeed, all but the last sentence of our analysis focused entirely on *Fry's* Count IV, where we expressly recognized the rule imposing vicarious liability on an employer for injuries to the employee of an independent contractor whose negligence in carrying out inherently dangerous work caused the injuries. *See Fry,* 659 A.2d at 249.

The majority's reasons in Part II.D.2 for withholding such vicarious liability are not unpersuasive, but I believe that any such result can be achieved only by our going en banc to overrule the applicable part of *Fry* that presently stands in the way of the result the majority proposes. *See M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1971). In short, I believe the majority is barred from announcing the result it imposes in this regard.

1. We did not deal with vicarious liability for "peculiar risk of physical harm" under § 416, to

be distinguished from § 413. *See* RESTATEMENT (SECOND) OF TORTS § 416 cmt. c.

