Marvin VELÁSQUEZ and Beatriz Canales, Appellants,

v.

ESSEX CONDOMINIUM ASSOCIATION and Zalco Realty Company, Appellees.

No. 98–CV–1048.

District of Columbia Court of Appeals.

Argued Oct. 28, 1999.
Decided Sept. 21, 2000.

---

Wayne M. Mansulla, Washington, DC, for appellants.

Warren Stephens, Baltimore, MD, with whom Stuart L. Plotnick, Silver Spring, MD, were on the brief for appellee Essex Condominium Association.

William J. Carter, with whom Jan E. Simonsen, Washington, DC, was on the brief for appellee Zalco Realty Company.

Before FARRELL, RUIZ and GLICKMAN, Associate Judges.

RUIZ, Associate Judge:

This is an appeal from summary judgment granted to appellees, Essex Condominium Association ("Essex"), the owner of Essex Condominiums, and Zalco Realty Company ("Zalco"), Essex's property manager. Appellant Marvin Velásquez[1] sued appellees for injuries received while employed by EV–Air–Tight, an independent contractor engaged by Essex to perform work at the Essex Condominium, as the result of a fall from a scaffold in the performance of that work. Appellant Ada Beatriz Canales sued appellees for loss of consortium arising out of Velásquez's injuries. Appellants argue that summary judgment should not have been granted because the trial court erred, 1) in holding that Essex and Zalco did not have control and custody of the workplace involved in Velásquez's accident and therefore were not liable under the District of Columbia Industrial Safety Act, D.C.Code §§ 36–222(1), –228(a); 2) in finding that the activity in which Velásquez was involved, grinding concrete from a scaffold, was not an inherently dangerous activity; and 3) in its finding that the appellants were not married at the time of the accident. We affirm.

## I.

### Factual Summary

#### A. The Contract

Essex contracted with EV–Air–Tight for the renovation of the exterior concrete facade of its building. The form agreement provided that Ev–Air–Tight "shall be solely responsible for and have control over construction means, methods, techniques, sequences, and procedures" of the construction, though Essex retained "the right at all times to examine the supplies, materials and equipment used by the Contractor and to observe the operations of the Contractor. . . ." Under the contract Ev–Air–Tight was "wholly and totally responsible for job and site safety . . . includ[ing] . . . the erection of barricades, temporary fencing to surround the site and as otherwise necessary." Ev–Air–Tight was also "responsible for initiating, maintaining, and supervising all safety precautions and programs in connection with the performance of the Contract," as well as to "take reasonable precautions for safety of, and . . . provide reasonable protection to prevent damage, injury or loss to: employees on the Work and other persons who may be affected thereby." In addition, Ev–Air–Tight was obligated to "comply with applicable laws, ordinances, rules, regulations and lawful orders of public authorities bearing on safety of persons and property and their protection from damage,

---

1. In the Superior Court record and the briefs on appeal the case is incorrectly styled *Marvin Vasquez* and *Beatriz Canales v. Essex Condominium Ass'n,* and *Zalco Realty Company.* The proper spelling of one the appellant's surname is Velásquez not Vasquez. Thus, although the appellant's name is spelled Vasquez in various pleadings and other documents in this case, this opinion refers to the appellant as Velásquez.

injury or loss." The contract further obligated Ev–Air–Tight to "obey ... the rules and regulations which may from time to time during [its] work be promulgated by [Essex] for various reasons such as safety, health, preservation of property or maintenance of a good and orderly appearance to the area." Essex "reserve[d] the right to perform construction or operations related to the Project."

### B. The Accident

On March 26, 1996, Velásquez was seriously injured in a construction accident while renovating the facade of Essex Condominiums. Velásquez, his safety harness unhooked from the safety line, fell over seventy feet to the ground while working on a two-point suspension, motorized scaffold, situated between the seventh and eighth floors while cutting concrete off the overhead balcony with an electric grinder. Velásquez testified in a deposition that he had been instructed in the proper use of the safety harness and instructed to wear the safety harness at all times. He had been on the scaffolding more than twenty times prior to his fall, and, according to Velásquez, always wore the safety harness hooked to the line as he had been instructed. He has no memory of the fall. Although fellow employees saw Velásquez falling, none could testify as to how or why the fall took place, or the circumstances of the fall. As a consequence of the fall, Velásquez suffered serious injuries: a fractured right femur, multiple fractures to his face and skull, laceration and hematoma of his right kidney, a collapsed right lung, brain injury and multiple contusions. These injuries required emergency surgery. Velásquez was comatose for eight days, hospitalized for two weeks and bedbound for an additional four months. Velásquez suffers continuing physical effects from the injuries received in the fall. He has a slowed mental capacity; he suffers permanent memory loss of the events of the entire week of March 26, 1996. Velásquez and Ada Beatriz Canales were officially married July 13, 1996.

## II.

### Standard of Review

"On appeal from the trial court's entry of summary judgment, this court conducts a *de novo* review of the record and applies the same principles employed by the trial court in initially considering the motion." *Associates Fin. Servs. of America, Inc. v. District of Columbia,* 689 A.2d 1217, 1220 (D.C.1997). Summary judgment is proper under Rule 56(b) where the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Big Builders, Inc. v. Israel,* 709 A.2d 74, 76 (D.C.1998). The court must view all facts and inferences in the light most favorable to the non-movant, and summary judgment should not be granted unless the moving party can show that no reasonable juror could find for the non-moving party. *See Galloway v. Safeway Stores, Inc.,* 632 A.2d 736, 738 (D.C. 1993).

## III.

### District of Columbia Industrial Safety Act

The District of Columbia Industrial Safety Act (the "Act"), D.C.Code § 36–228(a) (1993) provides that:

> [e]very employer shall furnish a place of employment which shall be reasonably safe for employees, shall furnish and use safety devices and safeguards, and shall adopt and use practices, means, methods, operations, and processes which are reasonably safe and adequate to render such employment and place of employment reasonably safe.

D.C.Code § 36–228(a). The Act defines "employer" to include "every person, firm, corporation ... agent, manager, representative ... or other persons having control or custody of any place of employment or of any employee." D.C.Code § 36–222(1). Thus, the Act creates a statutory duty

when an entity has control or custody over the "place of employment" *or* over "any employee." "This statutory duty of care is broader than its common law counterpart because it is incumbent not only upon employers as defined at common law," but also employers defined by the statute. *Martin v. George Hyman Const. Co.,* 395 A.2d 63, 70 (D.C.1978). The "place of employment" under the Act is broadly defined as "any place where employment is carried on." D.C.Code § 36–222(4). "Coverage, in other words, does not depend upon a particular degree of control or supervision exercised by the employer over the wage earner or work performed, if alternatively the employer has control of the worksite." *Traudt v. Potomac Elec. Power Co.,* 692 A.2d 1326, 1331 (D.C.1997). "By enactment of the instant statutory safety scheme, Congress imposed an affirmative duty upon persons with control over places of employment or employees to provide reasonably safe working conditions." *Martin,* 395 A.2d at 72. "Congress' concern with industrial accidents, as embodied in this legislation, affects not only the interests of individual wage earners but also the interests of society 'in the conservation of the lives and of the healthful vigor of its citizens....'" *Id.* (quoting *Johnston v. Fargo,* 184 N.Y. 379, 77 N.E. 388, 390 (1906)). "At the same time, [an employer's] duty under the statute is limited to those elements of the workplace over which it has 'control or custody.'" *Traudt,* 692 A.2d at 1331.

■ Velásquez and Canales argue that because Essex and Zalco had control or custody over the workplace at which Velásquez was injured, they were employers for purposes of the Act. As employers, they contend, Essex and Zalco owed a statutory duty of care to Velásquez to furnish a reasonably safe place of employment and insure the use of safe work practices and procedures. We agree with the first part of their proposition, that Essex and Zalco are employers under the Act; but disagree that such status made them liable for the accident in the context of the facts of this case.

In *Traudt,* we reviewed a situation similar to the instant case. PEPCO had contracted with Waco, an asbestos abatement company, for the removal of asbestos from PEPCO's electrical cables throughout its manhole system under a contract with provisions like those contained in the contract between Essex and EV–Air–Tight. *See id.* at 1330. For example, the contract between PEPCO and Waco stated that Waco was "solely responsible for the means, methods, techniques, sequences, and procedures of construction," and responsible for "initiating, maintaining and supervising all safety precautions" in connection with the work. *Id.* at 1331. PEPCO reserved the "right at all reasonable times to inspect and test the Work," and the right "to perform itself, or contract for and perform other or additional work on or near the Work covered by th[e] contract," and could direct Waco to "cease work at any point" temporarily to facilitate work by PEPCO. PEPCO required Waco to comply with PEPCO's own rules concerning safety and security and reserved the right to remove any Waco employee from the worksite. *See id.* PEPCO required that the asbestos removal work be done on energized cables, but did not furnish Waco with any written rules or guidelines concerning the handling of power lines. PEPCO employees maintained no safety-related presence at the work site. *See id.*

Waco gave Traudt a hammer and a metal screwdriver and after brief instruction on the asbestos removal process, the worker entered a PEPCO manhole. As Traudt, per the instructions given him, used the tip of the screwdriver to pry up the asbestos wrapping, the screwdriver pierced the lead insulation of. the wiring and contacted a live wire. An explosion ensued and Traudt was severely burned. *See id.* at 1330–31. On appeal from the Superior Court's grant of summary judgment to PEPCO, we reversed, holding that "PEPCO's ownership of the manhole system and the electric

cables, together with the authority it reserved in the contract to monitor Waco's work and perform other work simultaneously at the job site, established its control of the 'place of employment' sufficient to make it Traudt's employer for purposes of the statute," notwithstanding that PEPCO did not hire or pay Traudt, control the terms of his employment or direct the operative details of Traudt's work. *Id.* at 1331. We expressly noted that PEPCO asserted its control "concretely by dictating that work on the cables was to be done while they were energized." *Id.*

Given the broad remedial purposes of the statute, *see Martin,* 395 A.2d at 70–71, we hold that Essex's ownership of the building where the work was performed and the authority it reserved in the contract to monitor Ev–Air–Tight's work, to promulgate rules and regulations to which EV–Air–Tight and its employees were bound, and to inspect EV–Air–Tight's equipment, make Essex Velásquez's employer for purposes of the Act, *see Traudt,* 692 A.2d at 1331. The Act, however, is not a strict liability statute; rather the statute imposes a "statutory duty of due care." *Martin* 395 A.2d at 70. Once a duty is established under the Act, *i.e.,* that an entity is a covered employer, and that the injured party comes within the protection of the statute, *see Traudt,* 692 A.2d at 1331 n. 4, it is still necessary to determine the scope of the duty of due care under the statute and the reasonableness of defendant's actions. As we have made clear, an employer's "duty under the statute is limited to those *elements of the workplace* over which it has 'control or custody.'" *Id.* at 1332 (emphasis added). In other words, where status as an "employee" under the Act is grounded on ownership of and ability to exercise control or custody over the workplace, an employer's responsibility under the Act for a particu-

lar injury is commensurate with the nature and extent of the control it exercises in fact over the workplace.

This case is distinguishable from *Traudt,* in which we remanded for trial because there was a question of material fact regarding the elements of the workplace over which PEPCO had control, particularly because PEPCO had directed that the work be performed on energized wires. *See* 692 A.2d at 1331–32. In the instant case, as the trial court correctly noted, and undisputed record facts demonstrate, no one from Essex actually worked on the site or supervised any of EV–Air–Tight's work. Neither Essex, nor its agent Zalco, actually instructed, directed or otherwise controlled EV–Air–Tight employees in relation to the renovation project. EV–Air–Tight owned and erected the scaffolding, and no one from Essex or Zalco had access to the scaffolding from which Velásquez fell. Thus, even when the record is viewed in the light most favorable to Velásquez, there is no material question of fact that Essex or Zalco actually asserted any control over the scaffold so as to permit a reasonable jury to find that they breached a statutory duty of due care to Velásquez. *See Traudt,* 692 A.2d at 1332 (statutory duty limited to those elements of the workplace over which employer has control or custody).[2]

## IV.

### Vicarious Liability

Velásquez also argues that although the general rule is that a contractee is not liable for the negligent acts of its independent contractor, *see, e.g. Washington Metro. Area Transit Auth. v. L'Enfant Plaza Properties,* 448 A.2d 864 (D.C.1982), Essex and Zalco have a non-delegable duty to him because his work on the scaffold is an inherently dangerous activity. *See* RE-STATEMENT (SECOND) OF TORTS § 427. Ve-

---

2. Velásquez argues that Zalco had custody and control of the property in its management capacity as Essex's agent. Zalco, however, was not a party to the contract between Essex and EV–Air–Tight, and undisputed evidence

demonstrates that Zalco took no affirmative acts as regards the worksite. Interestingly, Velásquez had never heard of Zalco nor even knew that Zalco was a defendant.

lásquez's claim is foreclosed by this court's holding in *Traudt,* 692 A.2d 1326, 1337–38, that "employers of independent contractors are not vicariously liable to the employees of the independent contractor under sections 416 and 427 of the Restatement." At oral argument appellant's counsel contended that this holding is in conflict with the decisions in *Lindler v. District of Columbia,* 164 U.S.App.D.C. 35, 502 F.2d 495 (1974), which is not binding precedent, and *Fry v. Diamond Constr. Inc.,* 659 A.2d 241 (D.C.1995), which the *Traudt* majority distinguishes. *See Traudt,* 692 A.2d at 1336. *But see id.* at 1339–40 (Ferren, J., dissenting). We are thus bound to follow the *Traudt* majority and dismiss Velásquez's claim. *See M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C. 1971) ("[W]e have adopted the rule that no division of this court will overrule a prior decision of this court ... such result can only be accomplished by this court en banc.").[3]

Accordingly, the decision of the trial court granting summary judgment to appellees is

*Affirmed.*

---

**3.** As appellees are not liable to Velásquez, they also are not liable for appellant Canales' related claim for loss of consortium.