JOE C. MEDLEY v. NORTH CAROLINA DEPARTMENT OF CORRECTION

No. 360PA90

(Filed 31 January 1992)

### State § 8.3 (NCI3d)— inmates—medical care—doctor as agent of state

A doctor was an agent of the state as a matter of law for whose negligence the State is liable under the Tort Claims Act regardless of whether the doctor was an employee or an independent contractor. The duty to provide adequate medical care to inmates, imposed by the state and federal Constitutions, and recognized in state statute and case law, is such a fundamental and paramount obligation of the State that the State cannot absolve itself of responsibility by delegating it to another. When a principal has a nondelegable duty, one with whom the principal contracts to perform that

MEDLEY v. N.C. DEPARTMENT OF CORRECTION

[330 N.C. 837 (1992)]

duty is as a matter of law an agent for purposes of applying the doctrine of respondeat superior.

**Am Jur 2d, Penal and Correctional Institutions § 93.**

Justice MARTIN concurring.

ON appeal pursuant to N.C.G.S. § 7A-30 and discretionary review pursuant to N.C.G.S. § 7A-31(c) from the decision of the Court of Appeals, 99 N.C. App. 296, 393 S.E.2d 288 (1990), reversing a decision and order entered 25 August 1989 by the North Carolina Industrial Commission. Heard in the Supreme Court 12 February 1991.

*North Carolina Prisoner Legal Services, Inc., by Richard E. Giroux, for plaintiff-appellee.*

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Kim L. Cramer, for defendant-appellant.*

EXUM, Chief Justice.

This appeal arises from a medical negligence claim filed with the North Carolina Industrial Commission by plaintiff, an inmate at Odom Correctional Institution, against the Department of Correction (DOC) under the North Carolina Tort Claims Act, N.C.G.S. § 143-291. Defendant filed answer and motion to dismiss the claim insofar as it was based on the alleged negligence of Dr. John H. Stanley, a physician who had treated plaintiff. The motion to dismiss was grounded on the allegation that at the time of the alleged negligence Dr. Stanley was an independent contractor and not an officer, employee, involuntary servant or agent of the state within the meaning of the Tort Claims Act. On 23 January 1989 Deputy Commissioner Page issued an order holding that Dr. Stanley was an independent contractor not subject to the Tort Claims Act. The order treated defendant's motion as one for summary judgment as to Dr. Stanley and granted that motion. Plaintiff appealed the order to the Full Commission pursuant to N.C.G.S. § 143-292. On 25 August 1989 the Full Commission entered a decision and order affirming Deputy Commissioner Page's order. Plaintiff appealed the Commission's decision to the Court of Appeals pursuant to N.C.G.S. § 143-293.

The Court of Appeals agreed that Dr. Stanley was not an employee of DOC, but it reversed the decision below on the ground

that DOC had a nondelegable duty to provide medical care to inmates. Defendant petitioned this Court for discretionary review, which we granted on 30 August 1990.

We need not review the Court of Appeals' ruling that Dr. Stanley was as a matter of law not an employee of DOC. We conclude that regardless of whether Dr. Stanley was an employee or an independent contractor, he was as a matter of law an agent of the state because he was performing a nondelegable duty for the state. We, consequently, affirm the Court of Appeals' decision.

I.

Pleadings and evidence presented to the Industrial Commission tend to show the following:

Plaintiff, a diabetic, developed an infection under his left great toenail in April 1984. On 3 April 1984 Dr. Stanley examined plaintiff at Odom Correctional Institution (Odom) and diagnosed plaintiff's infection as being due to an ingrown toenail. Dr. Stanley prescribed an antibiotic. On 6 April 1984 Dr. Stanley again examined plaintiff and removed the toenail. Four days later, on 10 April 1984, Dr. Stanley again examined plaintiff and found the toe was quite dark. He transferred plaintiff to Central Prison Hospital for further surgical treatment. At Central Prison another physician diagnosed plaintiff as suffering from diabetic gangrene of the left great toe and performed a limited amputation of the toe. The wound from that operation failed to heal, and an above-knee amputation was performed on the leg on 14 May 1984.

Dr. Stanley began working as the unit physician at Odom Correctional Institution on 1 July 1981. The contract relevant to this action required Dr. Stanley, for a five-year period beginning 1 January 1984, at a salary of $1,250 a month, to provide medical services for inmates at Odom twice weekly and in emergency situations at any time. Either party could terminate the agreement upon thirty days' written notice to the other. Dr. Stanley was not provided benefits, such as a retirement pension, enjoyed by full-time state employees. Nor was any money withheld from his pay for taxes or social security benefits.

Richard K. Panek, Director of Health Services for DOC's Division of Prisons, stated in an affidavit that physicians working in prison units are subject to the administrative authority of unit

superintendents. Unit physicians are required to comply with DOC regulations concerning inmate health care.

Defendant's answers to interrogatories established that once a year a state medical audit team reviews medical records at Odom, and that a unit physician's contract is renewed by approval of several DOC officials, including the Director of Health Services, the Director of the Division of Prisons, and the Secretary of DOC.

During the time plaintiff was treated by him, DOC required Dr. Stanley to conform to regulations governing inmate health care. Until last year, the North Carolina Administrative Code required the Director of Health Services for the Division of Prisons to have on staff a Chief of Health Services responsible for developing and implementing procedures for inmate health care. The Code further required prison physicians to defer their judgment when security regulations conflicted with the performance of medical treatment: "Matters of medical . . . health involving clinical judgment are the sole province of the responsible physician . . . . However, these services must be provided in keeping with the security regulations of the facility." NCAC 2E.0204 (Feb. 1976) (amended eff. Sept. 1980) (repealed eff. Nov. 1991).

## II.

We hold, for reasons discussed below, that at the time he treated plaintiff Dr. Stanley was as a matter of law an agent of the state for whose alleged negligence the state is liable under the Tort Claims Act.

The Tort Claims Act encompasses claims arising from

the negligence of any officer, employee, involuntary servant or agent of the State while acting in the scope of his office, employment, service, agency or authority, under circumstances where the State of North Carolina, if a private person, would be liable to the claimant in accordance with the laws of North Carolina.

N.C.G.S. § 143-291 (1990). The legislature has not defined the term "agent" in the Tort Claims Act. "Under the Tort Claims Act negligence, contributory negligence and proximate cause, as well as the applicability of the doctrine of respondeat superior, are to be determined under the same rules as those applicable to litiga-

tion between private individuals." *Barney v. Highway Comm.*, 282 N.C. 278, 284, 192 S.E.2d 273, 277 (1972).

The Court of Appeals concluded that DOC is liable for Dr. Stanley's alleged negligence because the state has a nondelegable duty to provide adequate medical care for persons it incarcerates. We agree with this conclusion and hold that because the state's nondelegable duty renders an independent contractor hired to perform that duty an agent of the state as a matter of law, plaintiff's claim falls within the State Tort Claims Act and should be heard by the Commission.

A nondelegable duty may arise from circumstances recognized at common law and statute, and in "situations wherein the Law views a person's duty as so important and so peremptory that it will be treated as nondelegable. Defendants who are under such a duty '. . . cannot, by employing a contractor, get rid of their own duty to other people, whatever the duty may be.'" 5 Fowler V. Harper et al., *The Law of Torts* § 26.11, at 83 (2d ed. 1986) (quoting *Hardaker v. Idle Dist. Council*, 1 Q.B. 335, 340 (C.A.) (1896) ). "It is difficult to suggest any criterion by which the non-delegable character of such duties may be determined, other than the conclusion of the courts that the responsibility is so important to the community that the employer should not be permitted to transfer it to another." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 71, at 512, (5th ed. 1984). The nondelegable duty theory is an exception to the rule of nonliability by a principal for the work of independent contractors. The exception reflects "the policy judgment that certain obligations are of such importance that employers should not be able to escape liability merely by hiring others to perform them." Charles E. Daye and Mark W. Morris, *North Carolina Law of Torts* § 23.31, at 392-93 (1991).

The Restatement (Second) of Torts notes that a nondelegable duty can be based on a statute or regulation imposing a duty on one person or entity to care for others:

> One who by statute or by administrative regulation is under a duty to provide specified safeguards or precautions for the safety of others is subject to liability to the others for whose protection the duty is imposed for harm caused by the failure of a contractor employed by him to provide such safeguards or precautions.

Restatement (Second) of Torts § 424, at 411 (1963).

MEDLEY v. N.C. DEPARTMENT OF CORRECTION

[330 N.C. 837 (1992)]

This Court has recognized as nondelegable a duty of care arising from important policy in the absence of a statute. In *Pace v. Pace*, 244 N.C. 698, 699, 94 S.E.2d 819, 821 (1956), the Court noted public policy that a father provide for his minor children, " 'a duty he may not shirk, contract away, or transfer to another' " (quoting *Ritchie v. White*, 225 N.C. 450, 453, 35 S.E.2d 414, 415 (1945)). Just as a minor child is, relative to his adult parents, less able to care for himself, so is a prison inmate who is prevented from seeking medical care outside the prison less able to care for himself than are his custodians.

North Carolina courts and lawmakers have long recognized the state's duty to provide medical care to prisoners. "The prisoner by his arrest is deprived of his liberty for the protection of the public; it is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself." *Spicer v. Williamson*, 191 N.C. 487, 490, 132 S.E. 291, 293 (1926). *See also State v. Sparks*, 297 N.C. 314, 321, 255 S.E.2d 373, 378 (1979) (acknowledging state's duty to provide necessary medical care to inmates). Our legislature has codified this duty in a statute requiring DOC to "prescribe standards for health services to prisoners, which shall include preventive, diagnostic, and therapeutic measures on both an outpatient and hospital basis, for all types of patients." N.C.G.S. § 148-19 (1991). In furtherance of those standards, the statute also requires DOC to "seek the cooperation of public and private agencies, institutions, officials and individuals in the development of adequate health services to prisoners." *Id.*

In addition to common-law and statutory duties to provide adequate medical care for inmates, the state also bears this responsibility under our state Constitution and the federal Constitution. In *West v. Atkins*, 487 U.S. 42, 56, 101 L. Ed. 2d 40, 54 (1988), the Supreme Court of the United States interpreted the Cruel and Unusual Punishment Clause of the Eighth Amendment to impose a duty on prisons to provide medical care for inmates:

> Whether a physician is on the State payroll or is paid by contract, the dispositive issue concerns the relationship among the State, the physician, and the prisoner. Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those

in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights.

Likewise relevant is the United States Supreme Court's view in *Estelle v. Gamble*, 429 U.S. 97, 106, 50 L. Ed. 2d 251, 261 (1976), that the government has an "obligation to provide medical care for those whom it is punishing by incarceration." The *Estelle* decision explained the constitutional basis for this duty:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical "torture or a lingering death," the evils of most immediate concern to the drafters of the [Eighth] Amendment. In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose.

*Id.* (citations omitted).

More recently the United States Supreme Court, through Chief Justice Rehnquist, acknowledged "that in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals." *Deshaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 198, 103 L. Ed. 2d 249, 260 (1989). The Court explained further:

> The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs — e.g., food, clothing, shelter, medical care, and reasonable safety — it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

*Deshaney*, 489 U.S. at 200, 103 L. Ed. 2d at 262 (citing *Estelle*, 429 U.S. 93, 50 L. Ed. 2d 251, and *Youngberg v. Romeo*, 457 U.S. 307, 73 L. Ed. 2d 28 (1982)).

Defendant notes that the *Estelle* Court held that only deliberate indifference to a prisoner's medical needs, and not mere medical malpractice in prison, violates the Eighth Amendment. *Estelle*, 429 U.S. at 106, 50 L. Ed. 2d at 261. The *West* Court interpreted *Estelle* to require the state to provide "adequate medical care

to those whom it has incarcerated." *West*, 487 U.S. at 54, 101 L. Ed. 2d at 53. The *West* Court also referred to the state's duty under the Eighth Amendment "to provide essential medical care" for inmates. The *Deshaney* Court interpreted *Estelle* to provide that "the Eighth Amendment's prohibition against cruel and unusual punishment, made applicable to the States through the Fourteenth Amendment's Due Process Clause, requires the State to provide adequate medical care to incarcerated prisoners." *Deshaney*, 489 U.S. at 198, 103 L. Ed. 2d at 260 (citation omitted). The United States Supreme Court seems to interpret the Eighth Amendment to impose on states a broad duty—to provide "adequate medical care" to inmates—while at the same time allowing actions under section 1983 only for deliberate breaches of that duty. *See Whitley v. Albers*, 475 U.S. 312, 319, 89 L. Ed. 2d 251, 260-61 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."). A less egregious breach, such as negligence, is actionable against the state in tort. *See Estelle*, 429 U.S. at 107, 50 L. Ed. 2d at 262 (medical malpractice by prison doctor actionable under Texas Tort Claims Act).

Article I, Section 27 of the North Carolina Constitution provides a prohibition similar to the Eighth Amendment's Cruel and Unusual Punishment Clause. Our state constitutional provision emphasizes the importance of this interest in North Carolina.

We do not hold that plaintiff has alleged facts to support a claim that DOC has violated his state or federal constitutional rights. We hold that the duty to provide adequate medical care to inmates, imposed by the state and federal Constitutions, and recognized in state statute and case law, is such a fundamental and paramount obligation of the state that the state cannot absolve itself of responsibility by delegating it to another.

Other courts have held that the government's duty to provide medical care to inmates in its custody is nondelegable. In *Shea v. Spokane*, 17 Wash. App. 236, 562 P.2d 264 (1977), *aff'd per curiam*, 90 Wash. 2d 43, 578 P.2d 42 (1978), the Washington Court of Appeals held that a city jail had a nondelegable duty to provide adequate medical services to an inmate in its custody. The *Shea* court quoted a Michigan decision that is also relevant to the case before us:

"The duty which defendant owed to plaintiff [prisoner] arose out of this special relationship in which defendant was one

'required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection.' 2 Restatement of Torts 2d § 314A(4), p. 118 (1963)."

*Shea,* 17 Wash. App. at 242, 562 P.2d at 267 (quoting *Thornton v. Flint,* 39 Mich. App. 260, 275, 197 N.W.2d 485, 493 (1972)).

North Carolina case law, statute, the federal Constitution, our state Constitution, and other authorities discussed above all support our conclusion that DOC has a duty to provide adequate medical care to inmates in its custody, and that the duty is of such great importance that the state cannot avoid liability by contracting with someone else to perform it.

Where a principal has a nondelegable duty, one with whom the principal contracts to perform that duty is as a matter of law an agent for purposes of applying the doctrine of *respondeat superior. Hendricks v. Leslie Fay, Inc.,* 273 N.C. 59, 62, 159 S.E.2d 362, 366 (1968); *Dockery v. Shows,* 264 N.C. 406, 410, 142 S.E.2d 29, 32 (1965). This rule, like other common-law tort rules, applies to the definition of "agent" under the State Tort Claims Act. We conclude, therefore, that by virtue of the state's nondelegable duty to provide medical care for inmates, Dr. Stanley, hired by the state to perform this duty, was at the time of the alleged negligence as a matter of law an agent of DOC. DOC is liable to plaintiff under the State Tort Claims Act for any negligence of Dr. Stanley. We therefore affirm that part of the Court of Appeals' decision reversing the Industrial Commission's summary judgment order for defendant.

Affirmed.

Justice MARTIN concurring.

The majority refers to the interest of North Carolina in our constitutional prohibition against "cruel or unusual punishments." In this respect, I note that Article I, Section 27 of the North Carolina Constitution provides a prohibition similar to the Eighth Amendment to the United States Constitution. The difference is found in the provision upon which the State's duty to provide medical care for inmates is based: While the federal Constitution prohibits "cruel *and* unusual punishments," our State Constitution prohibits "cruel *or* unusual punishments." The conjunction in the

federal Constitution has been interpreted to limit the Eighth Amendment's prohibition to punishments that are *both* cruel and unusual. *See Stanford v. Kentucky*, 492 U.S. 361, 378, 106 L. Ed. 2d 306, 323, *reh'g denied*, 492 U.S. 937, 106 L. Ed. 2d 635 (1989). The disjunctive term "or" in the State Constitution expresses a prohibition on punishments more inclusive than the Eighth Amendment. It therefore follows that if the Cruel and Unusual Punishment clause of the federal Constitution requires states to provide adequate medical care for state inmates, the Cruel or Unusual Punishment clause of the North Carolina Constitution imposes at least this same duty, if not a greater duty.