The defendant and its named employee are not an agency and an agent of the State in the usual sense in which these terms are applied in the State Tort Claims Act. The question presented by the motion is whether plaintiff has alleged a failure to perform "such a fundamental and paramount obligation of the state that the state can not absolve itself of responsibility by delegating it to another, and thus must bear liability for the negligence of those who seek to fulfill that responsibility". Medley v. N.C.Department of Correction, 330 N.C. 837, 844, 412 S.E.2d 654(1992). Defendant's services were made available to the claimant through a contract made with the State, under orders of the United States District Court for the Eastern District of North Carolina, implementing the decision of the United States Supreme Court inBounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72(1977), that "the state must provide inmates with meaningful access to the courts by providing them with law libraries or alternative sources of legal knowledge". Smith v. Bounds, 657 F. Supp. 1327, 1333
(E.D.N.C., 1986).
Claimant's affidavit does not allege that he was indigent at the time he sought advice from defendant's staff attorney, and "the State is not constitutionally required to provide attorneys free of charge to those inmates who can afford counsel of their own." Bounds, at 1332, citing the U.S. Supreme Court's decision in Bounds, 430 U.S. at 824-25, 97 S.Ct. at 1496. However, in light of the fact that plaintiff was apparently an inmate at the time defendant's services were sought, that the Commission has found him to be indigent and ordered that he be allowed to proceedin forma pauperis in this action, that the formal rules of pleading are relaxed under the State Tort Claims Act, and that the complaint should be viewed in a light most favorable to the plaintiff when determining a Rule 12(b) motion, it is assumed, for the purposes of deciding this motion, that plaintiff was indigent when he sought defendant's services. Branch Banking Trust Co.v. Wilson County Board of Education, 251 N.C. 603,11 S.E.2d 844 (1960); Donovan v. Fiumara, 114 N.C. App. 524, 526,442 S.E.2d 572 (1994).
In Medley, the State Supreme Court, in a case of first impression, found that the State could be held liable for the malpractice of a physician, engaged as an independent contractor by the State to provide medical services to inmates, under the State Tort Claims Act. Although the liable party and grounds for liability are quite different (see Medley v. N.C. Department ofCorrection, I.C. No. TA-10184, 25 August 1989), the Court inMedley drew heavily on decisions concerning Title 42 U.S.C. § 1983, finding that physicians rendering medical services to federal inmates were acting "under color of law" because of a state's "obligation to provide medical care for those whom it was punishing by incarceration", and specifically, Estelle v. Gamble,429 U.S. 97, 106, 50 L.Ed.2d 251, 261(1976), Deshaney v. WinnebagoCounty Department of Social Services, 489 U.S. 189,103 L.Ed.2d 249 (1989), and a case arising in North Carolina, West v.Atkins, 487 U.S. 42, 101 L.Ed.2d 40(1988). In Atkins, the U.S. Supreme Court distinguished a case in which it found that a public defender, who was a state employee, did not act under a color of law "when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding". Polk County v. Dodson,454 U.S. 312, 325, 201 S.Ct. 445, 453, 70 L.Ed.2d 509 (1981). This was because the "criminal lawyer's professional and ethical obligations required him to act in a role independent of and in opposition to the State." Atkins, 487 U.S., at 50,108 S.Ct., at 2256. The Federal District Court in Smith v. Bounds rejected the State's proposal to hire attorneys on a contract basis to advise inmates — in favor of contracting with defendant to provide a staff of attorneys — in order to "afford the attorneys involved the necessary independence to properly represent the inmates' interests." Smith, 657 F. Supp., at 1331. [1] In crafting the contract, the District Court concerned itself with details bearing on both the attorneys' actual independence and the appearance of independence in the eyes of inmates. The claimant here alleges that defendant's employee was negligent while undertaking to advise him on how to bring a motion to overturn his criminal conviction on speedy trial grounds. Thus, the attorney was in the same posture — opposing the State in a criminal matter — as the public defender in Dodson.
While it certainly may be argued that defendant's employee was accomplishing the State's constitutionally mandated purpose of furnishing legal counsel, regardless of any effect on its purpose to incarcerate the claimant, the adversarial nature of his role logically permits — or requires — a distance from those actually accomplishing the purpose that makes holding the State liable on the basis of respondeat superior inappropriate. Presumably, that kind of detachment is also permissible when the prison is meeting needs with less immediate critical importance than medical care. Thus, although inmates also have an Eighth Amendment right to be properly fed, the State perhaps would not be liable for the unforeseen negligence of a milk truck driver on its premises, or a foreign object in canned food.
The premise for all of the physician cases cited above was that, "An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." Estelle, 429 U.S., at 106, 50 L.Ed.2d, at 261. InMedley, where the record showed that only minimum security prisoners could select their own physicians, the State Supreme Court referred to this as "the constitutional basis for [the State's] duty". Medley, at 843. The State's assistance in this case was not so urgent or exclusive. Inmates can and do retain private counsel. While that option might have practically been out of plaintiff's financial reach at the time of the alleged incident, he certainly had counsel, at his expense or the State's, at and before trial, when speedy trial motions are typically made. See N.C. Gen. Stat. § 15A-954(a)(3) and (c). While the cited cases turned on the nature of the putative agent's services, rather than the particular negligent act alleged, this tends to illustrate a distinction between legal and medical services which may be pertinent in light of the fact that, as the Court cited in Medley, "It is difficult to suggest any criterion by which the non-delegable character of such duties may be determined, other than the conclusion of the Courts that the responsibility is so important to the community that the employer should not be permitted to transfer it to another." W. Keeton, et. al., Prosserand Keaton on The Law on Torts, 71, At 512 (5th Ed. 1994).
Consequently, the plaintiff's claim should be, and hereby is, DISMISSED.
 S/ _____________________________________ J. RANDOLPH WARD COMMISSIONER
JRW:md
[1] The Court noted (at 1330-31) that the "plan must also permit attorney assistance for claims against prison officials pursuant to the State Tort Claims Act, N.C. Gen. Stat. § 143-29,et. seq.".