**Katherine HERBERT, Appellant,**

**v.**

**DISTRICT OF COLUMBIA,**
**et al., Appellees.**

**No. 93–CV–407.**

District of Columbia Court of Appeals.

Argued En Banc Nov. 19, 1997.

Decided Aug. 13, 1998.

---

Judy L. Feinberg, Washington, DC, with whom Andrea L. Koyner was on the brief, for appellant.

Edward E. Schwab, Assistant Corporation Counsel, with whom Jo Anne Robinson, Interim Corporation Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellee District of Columbia.

Before WAGNER, Chief Judge, and TERRY, STEADMAN, SCHWELB, FARRELL, KING, and REID, Associate Judges.

SCHWELB, Associate Judge:

The question presented is whether the District of Columbia is vicariously liable under the "non-delegable duty" doctrine to a prisoner at the District of Columbia jail for injuries resulting from medical malpractice on the part of an employee of an independent contractor, where the contractor was providing medical services at the jail under the terms of a contract with the District's Department of Corrections (DOC). We conclude that the "non-delegable duty" doctrine has no application and that the plaintiff is not entitled to any recovery against the District.

## I.

### FACTUAL BACKGROUND

The facts relating to this controversy are set forth in detail in Judge Terry's opinion for a majority of the division that initially heard this appeal. *See Herbert v. District of Columbia,* 691 A.2d 1175, 1178–79 (D.C.1997) (*Herbert I*). We summarize only those facts relevant to the single issue addressed in this opinion.

In 1986, DOC and Professional Development Corporation (PDC) entered into a contract under which PDC agreed to provide health care services for inmates of the District of Columbia Jail. While the contract was in effect, the jail's infirmary was staffed entirely by physicians, nurses, and physician's assistants, all of whom were employees of PDC. The performance of the contract was monitored by DOC personnel, but District employees were not authorized by the contract to, and they did not, provide medical care to prisoners at the jail or supervise the care provided by PDC.

On July 16, 1987, Katherine Herbert, a prisoner at the jail, was admitted to the infirmary after she exhibited symptoms of nausea and abdominal cramping secondary to

withdrawal from the use of narcotics. Charles Lawson, who was then employed by PDC as a physician's assistant, injected approximately fifty cubic centimeters of a dextrose or dextrose-and-sodium chloride solution into each of Ms. Herbert's thighs. At trial, all parties stipulated that these injections were entirely unauthorized and constituted medical malpractice by Lawson. As a result of this inappropriate treatment, Ms. Herbert developed cellulitis, suffered severe and debilitating pain, and substantially lost the use of both of her legs.

## II.

### PRIOR PROCEEDINGS

On December 17, 1987, Ms. Herbert filed suit against the District, PDC, and several individual defendants. In pretrial motions and at trial, Ms. Herbert alleged, among other things, that even if no negligence was shown on the part of the District, the District was liable to her for the malpractice committed by Lawson and PDC because the District's duty to provide appropriate health care to inmates at the jail was non-delegable. The motions judge rejected this contention, ruling that "the District of Columbia has a non-delegable duty only insofar as the plaintiff has suffered a constitutional deprivation." Because Ms. Herbert had raised no constitutionally based claim, the motions judge ruled against her on the issue of non-delegable duty. The trial judge adhered to this ruling at trial and directed a verdict in favor of the District.[1] Judgment was entered against PDC and Lawson in the amount of $150,000, but these defendants apparently lack the financial resources to satisfy the judgment.

Ms. Herbert noted a timely appeal, and on April 10, 1997, in *Herbert I*, a divided panel of this court reversed the judgment in favor of the District. Specifically, the court held that the District's duty to provide reasonable,

non-negligent medical care for prisoners in its custody is non-delegable, and that it was therefore error to grant the District's motion for a directed verdict. On July 31, 1997, we granted the District's petition for rehearing en banc and vacated the decision in *Herbert I. Herbert v. District of Columbia*, 698 A.2d 1017 (D.C.1997) (en banc) (per curiam). We now affirm the judgment of the trial court.[2]

## III.

### LEGAL DISCUSSION

In the District of Columbia, the DOC has statutory responsibility for "the safekeeping, care, protection, instruction, and discipline of all persons committed to [its] institutions." D.C.Code § 24–442 (1996). Section 24–442 encompasses the common law rule, which requires prison authorities and employees to exercise reasonable care in carrying out these obligations. *Hughes v. District of Columbia*, 425 A.2d 1299, 1302 (D.C.1981). "[I]t is but just that the public be required to care for the prisoner, who cannot[,] by reason of the deprivation of his liberty, care for himself." *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting *Spicer v. Williamson*, 191 N.C. 487, 132 S.E. 291, 293 (1926)). Indeed, the District acknowledges in its brief that it has a common law obligation to exercise "reasonable care in providing [prisoners with] access to medical services. . . ." It is therefore undisputed that the District may be held liable for its own negligence in the medical treatment of persons confined in its correctional facilities.

Ms. Herbert's conception of the District's responsibilities in this area, however, goes well beyond the obligation to exercise reasonable care. Insisting that the District's duty to its prisoners is "non-delegable," Ms. Herbert is effectively asking this court to impose liability upon the District irrespective of

---

1. Ms. Herbert also sought to recover against the District on a number of other theories, including negligent hiring, negligent supervision, and a claim that she was a third party beneficiary of the contract between DOC and PDC. *See Herbert I*, 691 A.2d at 1179. The division that heard the appeal sustained the trial court's disposition of these claims.

2. We have considered en banc only the question whether the District's duty to provide Ms. Herbert with non-negligent medical care was non-delegable. As to all other issues, we reinstate the judgment and opinion of the division in *Herbert I*.

whether or not the District was at fault. Under the "non-delegable duty" doctrine, the District would be obliged to compensate the plaintiff even if District officials exercised due care in the selection and supervision of a health care provider, and even if the District's conduct has been in all respects free of negligence. Ms. Herbert cites no statutory authority or dispositive judicial precedent for the imposition in these circumstances of liability without fault, and we are not prepared to adopt by judicial pronouncement a doctrine which would substantially broaden the District's responsibility for acts or omissions beyond its control.

■ Although prison personnel have a duty to exercise due care, we have held that they are not insurers of an inmate's safety or well-being. *Hughes, supra,* 425 A.2d at 1302. This court has recently reiterated that "liability for individualized fault is the norm," and that vicarious liability without fault "is regarded as an exceptional solution." *Traudt v. Potomac Elec. Power Co.,* 692 A.2d 1326, 1339 (D.C.1997) (citation and internal quotation marks omitted). If we were to adopt the rule urged upon us by Ms. Herbert, then the District would become a guarantor of satisfactory performance by PDC and its employees, even though the District has no control over that performance in a given case. There is obvious tension between such a doctrine and the principles enunciated in *Hughes* and *Traudt.*

In *Logue v. United States,* 412 U.S. 521, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973), the parents of Reagan Logue brought suit against the United States under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), alleging that the federal Bureau of Prisons (BOP) was responsible for Logue's death by suicide. Logue, a federal prisoner, had hanged himself while he was confined, pending trial, in the Nueces County, Texas, jail. The county had contracted with the BOP for the safekeeping, care and subsistence of federal prisoners. Logue's parents contended, *inter alia,* that employees of the jail had been negligent in their surveillance of Logue,[3] and that the United States was responsible for the negligence of the Nueces County sheriff's office because, in light of the county's contract with the BOP, the officials of the jail should be deemed to be employees of the federal government, and because the BOP had a "non-delegable" duty under 18 U.S.C. § 4042 [4] to assure the exercise of reasonable care by officials at state or local facilities at which federal prisoners were housed. *Id.* at 526–28 & n. 7, 93 S.Ct. 2215. The Supreme Court unanimously rejected this position:

> [W]e are not persuaded that employees of a contractor with the government, whose physical performance is not subject to governmental supervision, are to be treated as acting on behalf of a federal agency simply because they are performing tasks that would otherwise be performed by salaried employees of the government.

*Id.* at 531–32, 93 S.Ct. 2215 (internal quotation marks omitted). Although there are distinctions between *Logue* and the present case,[5] we deem persuasive for present purposes the Court's rejection, in a scenario similar to ours, of the plaintiffs' "non-delegable duty" theory.[6]

In *Rivers v. State,* 159 A.D.2d 788, 552 N.Y.S.2d 189 (1990) (*Rivers II*), a surgeon performed a hernia operation on a prison inmate. The inmate alleged that the surgery had been negligently carried out. The State did not employ or even select the surgeon, although the State's referring doctor knew

3. Logue had made a previous attempt to kill himself and was known to be a suicide risk.

4. 18 U.S.C. § 4042 is the federal counterpart of D.C.Code § 24–442. It requires the BOP to "provide for the safekeeping, care, and subsistence of all persons charged with ... offenses against the United States...."

5. *E.g.,* in *Logue,* the Court relied in part, *see* 412 U.S. at 532, 93 S.Ct. 2215, on 28 U.S.C. § 2671, which states, *inter alia,* that the term "Federal agency ... does not include any contractor with the United States." This statute further provides that "Employee of the government" includes "officers or employees of any federal agency...."

6. Many District of Columbia prisoners are held in federal facilities. *Logue's* rejection of the "non-delegable duty" construct should also be followed here in order to ensure that District prisoners are treated uniformly in this respect regardless of the location where they are incarcerated.

that the surgeon performed operations at the hospital in question. The trial court held that the State was liable for the surgeon's negligence on the theory that the State's duty to provide health care to the inmate was non-delegable, and that the surgeon's failure to exercise due care was therefore attributable to the State. *Rivers v. State*, 142 Misc.2d 563, 537 N.Y.S.2d 968, 971–74 (Ct.Cl. 1989) (*Rivers I*). The appellate court reversed, holding that the State should not be held to be "the guarantor of the adequacy of medical services under all circumstances, including those beyond its control." *Rivers II*, 552 N.Y.S.2d at 189. The court went on to state that the rule applied by the trial court would

> lift prisoners' rights vis-a-vis malpractice beyond the rights afforded to all others. Claimant's status as a prisoner and his impaired ability to make health-related decisions totally on his own hardly justifies such an extreme result in terms of the State's responsibility.... [T]he premise for imputing liability is the element of control. We consider that rationale the appropriate test of responsibility.

*Id.* 552 N.Y.S.2d at 189–90 (citation and internal quotation marks omitted). Noting that the surgeon was an independent contractor and that no negligence was established on the part of the State, the court concluded that the State was not responsible for Rivers' injuries. *Id.* 552 N.Y.S.2d at 190.

We agree with the Appellate Division's analysis. *Logue* and *Rivers*, read together with *Hughes* and *Traudt*, support affirmance of the trial court's decision.

In support of her claim that the District's duty to exercise reasonable care in the provision of medical services to prisoners is non-delegable, Ms. Herbert relies on *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), and a number of other decisions construing the Cruel and Unusual Punishment Clause of the Eighth Amendment. These decisions have no application to the case at bar.

The Supreme Court concluded in *Estelle* that prison officials' "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain ... proscribed by the Eighth Amendment." *Id.* at 104, 97 S.Ct. 285 (citation and internal quotation marks omitted). The Court has also held that the constitutional obligation to avoid the imposition of cruel and unusual punishment is non-delegable:

> Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights.

*West v. Atkins*, 487 U.S. 42, 56, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (footnote omitted).

The present case, however, does not involve the kind of conduct which gives rise to an Eighth Amendment claim. The defendants are alleged to have been negligent, not cruel. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause...." *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). "[A]n inadvertent failure to provide adequate medical care cannot be said to constitute [a violation of the Eighth Amendment]." *Estelle, supra*, 429 U.S. at 105, 97 S.Ct. 285. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* at 106, 97 S.Ct. 285. On the contrary, a plaintiff seeking to establish a constitutional violation must prove "deliberate indifference to serious medical needs." *Id.*

To hold that the duty not to be cruel or wanton or obdurate cannot be delegated away is one thing; to expand that doctrine to make the District liable for the ordinary negligence of a contract health care provider, without proof of lack of due care on the part of the District, is quite another. The present case involves *medical malpractice, and* Ms. Herbert has neither alleged nor proved anything more.

■ In sum, the District's limited obligation under the Eighth Amendment not to inflict cruel and unusual punishment may not be avoided by delegation to an independent

contractor, but there is no evidence in this case that the District failed to carry out its constitutional responsibilities. There was proof that PDC and Lawson engaged in medical malpractice, but for the reasons discussed above, the District's common law and statutory obligation to exercise reasonable care in providing medical services may lawfully be delegated, and the District cannot be held liable without proof of negligence on the part of its officials or employees.[7]

The District has meaningful responsibilities pursuant to D.C.Code § 24–442, but it can satisfy those responsibilities by exercising reasonable care in the selection and supervision of its independent contractors. Ms. Herbert has not demonstrated that the District failed to carry out these statutory duties.

## IV.

## CONCLUSION

If liability without fault should be imposed on the taxpayers in circumstances of the kind presented by this record, this should be effected by the legislature, not by the courts. Accordingly, the judgment of the trial court is affirmed. Except as to the issue of the District's non-delegable duty, the division's opinion in *Herbert I* is reinstated.

*So ordered.*

7. In her Reply Brief, Ms. Herbert relies heavily on two state court cases which apparently hold that the duty of state or local officials to provide non-negligent health care to prisoners is non-delegable and cannot be avoided by engagement of an independent contractor. *See Shea v. City of Spokane,* 17 Wash.App. 236, 562 P.2d 264 (1977), *aff'd,* 90 Wash.2d 43, 578 P.2d 42 (1978); *Medley v. North Carolina Dep't of Correction,* 330 N.C. 837, 412 S.E.2d 654 (1992). These decisions are analyzed in considerable detail in this writer's separate opinion in the division. *Herbert I, supra,* 691 A.2d at 1187–88 (Schwelb, J., concurring in part and dissenting in part). Substantially for the reasons stated in that opinion, we do not believe that these cases provide persuasive precedent for Ms. Herbert's position. *Shea* is factually distinguishable in critical respects, for in that case the actions of the City of Spokane could reasonably be characterized as wanton or obdurate. *Medley* rests substantially on what we regard as a patent *non-sequitur;* the court believed that the state's obligations to inmates were non-delegable, like those of a father to a child,

TERRY, Associate Judge, with whom Chief Judge WAGNER and Associate Judge REID join, dissenting:

The principal issue in this case, one of first impression in this court, is whether the trial court was correct when it ruled that the District of Columbia could delegate to a contractor its duty to provide necessary and appropriate medical care to prisoners incarcerated in its prison system. I believe this ruling was erroneous, and thus I would reverse the judgment in favor of the District and remand this case for further proceedings.

In her motion for summary judgment, appellant argued that the District had a non-delegable duty to provide her with necessary medical care while she was confined in the D.C. Jail. In ruling on the motion, the court noted initially that the cases appellant cited in support of her position merely defined the duty owed by the District, but did not say whether it was delegable or non-delegable. The court then ruled that "the District of Columbia has a non-delegable duty only insofar as the plaintiff has suffered a constitutional deprivation." Because appellant had not raised any such constitutionally based claim, the court denied her motion.[1]

In challenging this and similar rulings during the trial, appellant contends that the

but failed to draw the logical conclusion; a father carries out his parental responsibilities if he takes his child to a reputable physician, and surely cannot be held personally liable if the physician subsequently makes an error in treating the child. The same rule should apply to the state.

We also note that *Logue* was not cited either in *Shea* or in *Medley,* and that the reasoning of *Medley,* in particular, is difficult to reconcile with that of *Logue.* Compare *Medley,* 412 S.E.2d at 659 ("by virtue of the state's non-delegable duty to provide medical care for inmates, Dr. Stanley, hired by the state to perform this duty, was at the time of the alleged negligence as a matter of law an agent of [the Department of Correction]") *with* the passage from *Logue,* 412 U.S. at 531–32, 93 S.Ct. 2215 quoted at page 7, *supra.*

1. The court also rejected appellant's argument that the District was liable on a theory of negligence *per se.* Appellant does not contest that ruling.

District does indeed have a non-delegable duty to provide appropriate medical care for inmates within its custody. She cites D.C.Code § 24–442 (1996), as well as case law from other jurisdictions, to support her argument that the District must be held liable when one of its prisoners is injured as a result of malpractice committed by prison health care providers, regardless of whether they are District employees or independent contractors. I agree with appellant and would hold that the District's duty to provide reasonable, non-negligent medical care for prisoners in its custody is non-delegable.

## A. The District's Limited Constitutional Duty

The Supreme Court has held that federal and state governments have a non-delegable duty, based on the Eighth Amendment to the Constitution, to provide adequate medical care to persons incarcerated within their prison systems. *West v. Atkins,* 487 U.S. 42, 54, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Further, the Court has held that a private physician treating prison inmates under a contract with a state is a government agent, acting under color of authority sufficient to hold the state liable under federal civil rights statutes, such as 42 U.S.C. § 1983, for damages resulting from the physician's "deliberate indifference" to the serious medical needs of the inmates. *Id.* at 55–56, 108 S.Ct. 2250. Such "deliberate indifference ... constitutes the 'unnecessary and wanton infliction of pain' ... proscribed by the Eighth Amendment." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (citation omitted). The existence of such indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed." *Id.* at 104–105, 97 S.Ct. 285 (citations omitted).

With respect to medical treatment, however, "an inadvertent failure to provide adequate medical care cannot be said to constitute [a violation of the Eighth Amendment]." *Id.* at 105, 97 S.Ct. 285. Although a state has a constitutional duty to provide for the "basic human needs" of anyone whose liberty it has restrained, and although medical care is included among those "basic human needs," *De Shaney v. Winnebago County Dep't of Social Services,* 489 U.S. 189, 200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), the state also "has considerable discretion in determining the nature and scope of its responsibilities." *Youngberg v. Romeo,* 457 U.S. 307, 317, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). What these and similar cases say, in essence, is that an allegation of medical malpractice alone will not support a claim that a prisoner's Eighth Amendment rights have been violated. Thus, to prove a constitutional violation in providing medical services, a prisoner must show conduct so extreme that it surpasses simple negligence. *See Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 705 (11th Cir.1985); *Henderson v. Harris,* 672 F.Supp. 1054, 1063 (N.D.Ill.1987) ("Contracting with private health services agencies will not relieve the federal government from its constitutional obligation" (citations omitted)).[2]

Although appellant occasionally refers in her brief to a possible constitutional duty on the part of the District, she makes no substantial Eighth Amendment claim, nor did she do so in the trial court. Instead, she appears to contend that the District has only a general, non-delegable duty to prevent the commission of simple medical malpractice on prisoners in its custody. If such a duty exists, therefore, it must be found outside the confines of the Constitution.

## B. The District's Non–Constitutional Duty

This court has held that the District, its agents and employees are subject to ordinary negligence standards requiring them to exercise reasonable care in the protection and safekeeping of inmates in its correctional facilities. *Matthews v. District of Columbia,*

---

**2.** Appellant, citing *Henderson v. Harris,* suggests that the District's duty to provide her with "appropriate" or "sufficient" medical care is not only non-delegable but constitutionally based. A careful reading of *Henderson* reveals, however, that it is a case of "deliberate indifference," as that term is used in *Estelle v. Gamble,* 429 U.S. at 104, 97 S.Ct. 285, rather than simple negligence as in the case at bar. *See Henderson,* 672 F.Supp. at 1058–1059.

387 A.2d 731, 734 (D.C.1978); *Gaither v. District of Columbia*, 333 A.2d 57, 60 (D.C. 1975). These duties are codified in D.C.Code § 24–442, which states that the Department of Corrections is "responsible for the safe-keeping, care, protection, instruction, and discipline of all persons committed to [its] institutions." However, even though prison personnel have a duty to exercise reasonable care, they are not insurers of an inmate's safety. *Hughes v. District of Columbia*, 425 A.2d 1299, 1302 (D.C.1981). Rather, in order to establish liability, a prisoner "must establish by competent evidence a standard of care; that the defendant violated that standard; and that such violation proximately caused injury to the [prisoner]." *Id.* With respect to medical care, we have held that physicians owe the same duty of care to prisoners in the District's custody that they owe to non-incarcerated patients. Thus, when treating prisoners, physicians are subject to ordinary negligence standards requiring them to exercise reasonable care. *District of Columbia v. Mitchell*, 533 A.2d 629, 648 (D.C.1987).

The delegability of the District's duty to provide prison inmates with medical care and its potential liability when an independent contractor commits malpractice are questions unresolved in this jurisdiction until now. Indeed, there appear to be very few reported cases anywhere that address the delegability issue.[3] In at least two instances, however, courts have held governments liable for negligent medical care provided to prisoners by independent contractors on the ground that the government's duty to provide medical care to its prisoners is not delegable.[4]

In *Medley v. North Carolina Dep't of Correction*, 330 N.C. 837, 412 S.E.2d 654 (1992), the North Carolina Supreme Court held that the state was liable under its Tort Claims Act, N.C.G.S. § 143–291 (1990), for injuries resulting from malpractice committed by its agents when providing medical care to inmates. In that case a private physician, acting as an independent contractor for a state prison, misdiagnosed an inmate's affliction as an ingrown toenail when in fact he was suffering from diabetic gangrene in his left big toe. The toe was later amputated after another doctor discovered the gangrene, but the wound did not heal properly, and the prisoner's leg eventually had to be amputated above the knee.

On appeal, the court held that because of the state's position as the sole health care provider for its prisoners, and because the state had a duty to provide them with medical services, a duty imposed by both the United States and North Carolina Constitutions as well as a state statute,[5] the duty was of such importance as to make it non-delegable:

> We hold that the duty to provide adequate medical care to inmates ... is such a fundamental and paramount obligation of the state that the state cannot absolve

---

**3.** As the District points out, *Estelle v. Gamble, supra*, does not answer this question. It suggests that a prisoner who receives negligent medical care may sue for malpractice, 429 U.S. at 107 & n. 15, 97 S.Ct. 285, but it does not say whether the state or the negligent physician is the proper party defendant, or whether the prisoner may elect to sue either (or both).

**4.** There is at least one case to the contrary, *Rivers v. State*, 159 A.D.2d 788, 552 N.Y.S.2d 189 (1990). My colleagues in the majority endorse its reasoning, but I do not find it persuasive. They also cite *Logue v. United States*, 412 U.S. 521, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973), which strikes me as clearly distinguishable. The decision in *Logue* depended in large part on a federal statute, 28 U.S.C. § 2671, which defined the term "federal agency" as excluding "any contractor with the United States." An employee of such a contractor was thus held not to be a federal employee, so that the United States was not liable under the Federal Tort Claims Act. Because there is no comparable statute involved in this case, *Logue* is of little or no assistance here.

**5.** N.C.G.S. § 148–19(a) (1991) provides in relevant part:

> The general policies, rules and regulations of the Department of Correction shall prescribe standards for health services to prisoners, which shall include preventive, diagnostic, and therapeutic measures on both an outpatient and a hospital basis, for all types of patients. A prisoner may be taken, when necessary, to a medical facility outside the State prison system. The Department of Correction shall seek the cooperation of public and private agencies, institutions, officials and individuals in the development of adequate health services to prisoners.

itself of responsibility by delegating it to another.

*Id.* at 844, 412 S.E.2d at 659. Consequently, the court said, "one with whom the [state] contracts to perform that duty is as a matter of law an agent for purposes of applying the doctrine of *respondeat superior.*" *Id.* (citations omitted). The court concluded that this rule "applies to the definition of 'agent' under the State Tort Claims Act" and thus held the state liable for the medical malpractice of an independent contractor who had been hired to provide medical services to state prisoners.

Although the District is statutorily required by D.C.Code § 24–442 to provide for the medical care of its prisoners, there is no District of Columbia tort claims act under which the District may be held liable as a principal for the negligence of its agents. However, the rationale of the *Medley* court is similar to that found in a case from the State of Washington that does not involve a tort claims act.

In *Shea v. City of Spokane,* 17 Wash.App. 236, 562 P.2d 264 (1977), *aff'd,* 90 Wash.2d 43, 578 P.2d 42 (1978), a prisoner suffered a serious spinal cord injury when he fell in his jail cell. He sued the city of Spokane for damages resulting from negligent medical treatment by a doctor who, under contract with the city, had examined him at the jail but failed to detect the severity of his injury. The Washington Court of Appeals held that the city had a non-delegable duty to provide prisoners in its jail with adequate health care, and that the negligence of the doctor in treating the prisoner must therefore be imputed to the city. Because the prisoner, by being arrested, had been deprived of his ability to care for himself, the city had a duty to provide health care for him. That duty, the court held, was non-delegable because the city had "complete control" over the prisoner:

> [T]he nature of the relationship [between the city and the prisoner] is such as to

render non-delegable the duty of providing for the health of a prisoner. Stated another way, the duty is so intertwined with the responsibility of the City as custodian that it cannot be relieved of liability for the negligent exercise of that duty by delegating it to an "independent contractor" physician.

*Id.* at 242, 562 P.2d at 268 (citations omitted).[6]

I agree with the rationale of the *Medley* and *Shea* cases and would adopt it for the District of Columbia. In my view, the District has a duty, imposed both by the Constitution[7] and by statute,[8] to provide medical care to prisoners incarcerated in its correctional system. Such confinement creates what the *Shea* court called a "special relationship," based on the fact that the District has "complete control over a prisoner deprived of liberty." *Shea, supra,* 17 Wash. App. at 242, 562 P.2d at 268; *see West v. Atkins, supra,* 487 U.S. at 57 n. 15, 108 S.Ct. 2250 ("prisons and jails are inherently coercive institutions that for security reasons must exercise nearly total control over their residents' lives"). A prisoner in need of medical care cannot choose the physician who will provide it; the prisoner must accept such care from the physician made available by the District or go without medical care entirely. The plain fact is that, once incarcerated, a prisoner's choice of a health care provider is forfeited to the District. "An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Estelle, supra,* 429 U.S. at 103, 97 S.Ct. 285. Because the District has thus assumed the absolute right to make decisions about providing health care for the prisoner, it should also be obliged to accept the consequences when those decisions go awry.

I conclude, as did the *Shea* court, that "the nature of the relationship" between the District and the prisoner—specifically, the prisoner's total dependency on the District to provide medical care—makes the District's

---

**6.** The Supreme Court of Washington later adopted in full "the analysis, rationale, and conclusion of the Court of Appeals" on this issue. 90 Wash.2d at 44, 578 P.2d at 42.

**7.** *De Shaney, supra,* 489 U.S. at 200, 109 S.Ct. 998; *West, supra,* 487 U.S. at 54, 108 S.Ct. 2250.

**8.** D.C.Code § 24–442.

 

duty non-delegable.[9]  It "cannot be relieved of liability for the negligent exercise of that duty by delegating it to an 'independent contractor' physician."  17 Wash.App. at 242, 562 P.2d at 268 (citations omitted); *accord, Medley, supra,* 330 N.C. at 844, 412 S.E.2d at 659 ("the duty to provide adequate medical care to inmates ... is [so] fundamental ... that the state cannot absolve itself of responsibility by delegating it to another").  I would hold, therefore, that the trial court erred in ruling that the District could delegate its duty to an independent contractor, and hence that it also erred in directing a verdict for the District.  A corollary holding would be that PDC and its employees are, "as a matter of law," agents of the District "for purposes of applying the doctrine of *respondeat superior." Medley, supra,* 330 N.C. at 845, 412 S.E.2d at 659 (citations omitted).[10]

Because my colleagues in the majority see this case differently, I respectfully dissent.

---

**9.** The Supreme Court in *West v. Atkins, supra,* likewise focused on this same relationship, not on whether the physician was a state employee or an independent contractor, in holding that the physician was acting "under color of state law" within the meaning of a federal civil rights statute:

Whether a physician is on the state payroll or is paid by contract, *the dispositive issue concerns the relationship among the State, the physician, and the prisoner.*  Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody....

[The doctor was] fully vested with state authority to fulfill essential aspects of [that] duty....  [The doctor] must be considered to be a state actor.

487 U.S. at 56–57, 108 S.Ct. 2250 (emphasis added).  Although *West* does not decide the precise issue presented in this case, its reasoning is parallel to that of the *Medley* and *Shea* cases, which are directly in point.

**10.** The District, of course, would not be without a remedy against PDC or any such agent, either under common law principles of contribution or indemnity or, presumably, under the contract.